## TONDEUR *v.* STEWART and others.

*(Circuit Court, W. D. Pennsylvania.* July 17, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT.

The first claim of letters patent to Cleon Tondeur, No. 258,156, dated May 16, 1882, for improvements in glass-annealing furnaces, is for "the combination of the bars, *d, d'*, arranged side by side, and alternately between each other, the set, *d*, supporting the sheets of glass while the bars, *d'*, are pushed towards the leer or flattening wheel, *a*, and the set, *d'*, supporting the sheets of glass, and moving them onward and through the tunnel, substantially as set forth;" and the distinguishing feature of the invention is that the sheets of glass travel through the annealing tunnel, elevated above the floor, away from the disturbing conditions there existing, so as to be subjected on both sides to heated currents of air, whereby they are uniformly annealed. *Held,* that it is immaterial whether the vertical movement in shifting the glass from the one set of bars to the other is divided between the two sets according to the description in the specification, or is executed by the transmitting bars alone, the other set being immovable, as is the case in the furnace of the defendants, who are infringers notwithstanding this change in arrangement.

2. SAME—DISCLAIMER.

The only previously known rests for sheets of glass during their transmission through the annealing tunnel being floor-rests, a disclaimer of "fixed temporary rests" *held* to mean floor-rests.

3. SAME—CONSTRUCTION OF CLAIM.

That the patent may be sustained, the court should adopt the construction claimed by the patentee himself, if consistent with the language he has employed.

4. SAME—CONFOUNDING CLAIMS.

A construction which would make two distinct claims of a patent cover, not different things, but one and the same thing, is to be avoided, if possible.

In Equity.

*Bakewell & Kerr,* for complainant.

*John H. Roney,* for respondents.

ACHESON, J. This suit is upon letters patent No. 258,156, dated May 16, 1882, granted to the plaintiff for improvements in glass-annealing furnaces. The patent, which relates especially to the annealing of window-glass, shows a flattening furnace, having four flattening stones mounted on a circular revolving table or wheel, and a continuous and straight annealing chamber, tunnel, or leer, running directly from the flattening furnace; the heated air from the flattening oven passing, by a clear draught, into and through the leer, and finally escaping at its outer end. Extending longitudinally through the leer, and elevated above the bottom thereof, are two sets of iron bars designated *d* and *d'*, arranged side by side and placed alternately, one set reciprocating between the other, whereby the sheets of glass are supported in and carried through the leer. The bars described in the specification are supported by transverse shafts, two sets of arms being attached to each shaft,—one set of arms with hinged joints for the bars, *d*, and one set of arms with rollers or

grooved wheels for the reciprocating bars, $d'$, and, by means of a lever connected with one of the shafts, one set of bars is elevated while the other is lowered.

The motion of the bars, $d$, it is stated, however, "is very small, since they can move only the distance the lever, $h''$, moves the arm, $e'''$, which has no effect on the progress of the glass through the tunnel." The chief function of the bars, $d$, is to support the sheets of glass while the reciprocating or transmitting bars, $d'$, (which rest on the rollers or grooved wheels, and move readily back and forth in the leer,) are pushed forward towards the flattening wheel.

The described operation of the bars is as follows: When the sheet of glass, by the moving of the wheel, is sufficiently cooled and in proper position, it is placed on the ends of the reciprocating bars, $d'$, they being advanced into the furnace. The operator at the outer end of the leer then draws the bars, $d'$, outward the width of the sheet. He then moves the lever so as to lower the bars, $d'$, and raise the bars, $d$, and thus the sheet is transferred from the former to the latter, where it rests while he pushes the bars, $d'$, back into the furnace. He then reverses the lever, and the bars, $d'$, take up the sheet. A second sheet is then placed on the inner ends of the bars, $d'$, and the two sheets are moved down the leer, and deposited on the bars, $d$, and the bars, $d'$, moved back again, and this operation is repeated until a series of sheets fill the leer, when they are discharged from the outer end, one by one, at each reciprocal movement of the bars, $d'$.

The distinguishing feature of the plaintiff's invention is this, viz., that the sheets of glass travel through the leer, elevated above the floor, away from the disturbing influences of the conditions there existing, and so as to be subjected, on both sides, to the heated currents of air, whereby they are uniformly annealed. This feature is altogether novel. Nothing of the kind is shown in the American patent to Bievez, or Bowen's British patent, in both of which the glass is moved along the floor of the leer, and rests thereon, except during the instant of transfer from place to place.

To the objection that the plaintiff has failed specifically to claim elevated bars, it is sufficient, once for all, to say that the specification expressly declares that "a space of about one foot deep is desirable beneath the bars," and the drawings plainly show the bars to be elevated. In all the details of description the specification clearly implies such elevation. The patentee says: "The advantages and uses of my invention are apparent to those skilled in the art to which it appertains." From the testimony of such skilled person, in the record, it is seen that they understand the great merit of the invention to consist in keeping the sheets of glass, as they pass through the leer, constantly raised above the floor; and as a patent is read by persons skilled in the art to which it relates, so should it be read by the court. *Loom Co.* v. *Higgins*, 105 U. S. 580. Moreover, the first claim of the patent necessarily implies the elevation of

the bars above the bottom of the leer; otherwise they could not perform their supporting function.

Upon the question of the utility of the invention, I content myself with saying that the proofs thereof are unusually full and convincing.

The defendants are charged with the infringement of the first, third, and fifth claims of the plaintiff's patent. The first claim is as follows:

"(1) The combination of the bars, *d, d'*, arranged side by side, and alternately between each other, the set, *d*, supporting the sheets of glass while the bars, *d'*, are pushed towards the leer or flattening wheel, *a*, and the set, *d'*, supporting the sheets of glass, and moving them onward and through the tunnel, substantially as set forth.

The third claim is for the furnace and tunnel, made with a continuous and straight chamber from the section of the flattening wheel, in combination with the bars, *d* and *d'*, so constructed that the bars, *d'*, shall enter the leer furnace over the section of the wheel. The subject-matter of the fifth claim is the furnace, with flattening wheel and tunnel, constructed and adapted to the two sets of bars, *d* and *d'*, the latter being made by the grooved wheels to reciprocate and project alternately into the furnace, and out of the exit, whereby the sheets of glass are received by the furnace ends of said bars, and discharged by their exit ends out of the tunnel, without opening the furnace or tunnel.

In the defendants' tunnel or leer the grooved wheels which support the reciprocating bars are sustained from above, instead of from below, and the rest-bars are fastened rigidly to immovable cross-bars, and consequently have no movement. But, with these changes in construction, the defendants use everything shown and described in the first, third, and fifth claims of the plaintiff's patent.

Now, it is quite clear that the change in the mode of supporting the reciprocating bars is unimportant and formal. Is the change to immovable rest-bars anything else? Clearly, the defendants' stationary rest-bars perform the identical supporting function which the plaintiff's bars, *d*, perform. And, upon the slightest reflection, it must be perceived that, for the supporting of the sheets of glass by the bars, *d*, and the supporting and moving thereof by the bars, *d'*, it is altogether immaterial whether the vertical movement is divided between them or is executed by the bars, *d'*, alone. The principle is the same whether the one arrangement or the other be adopted. The defendants, then, employ two sets of iron bars, operating, substantially, in the same way, and producing the same results, as the plaintiff's. The simple truth is that the defendants have appropriated the substance of the plaintiff's invention.

But it is contended by the defendants that their immovable rest-bars are within the scope of a disclaimer to be found in the plaintiff's specification, and that the first claim of the patent, especially in view

of that disclaimer, must be limited to the bars $d$ and $d'$, connected to the arms, $e'$ and $e'''$, as particularly described. The disclaimer is as follows: "I am aware that movable bars and fixed temporary rests for the glass have long been in public use to move sheets of glass through an annealing tunnel. Therefore I do not claim these."

This disclaimer, however, as appears from the contents of the file-wrapper, was made in view of Bowen's British patent, already referred to, and in recognition of the prior state of the art, which (as stated in the letter of the plaintiff's solicitor transmitting the disclaimer) was that "one plain set of reciprocating bars" had long been used to move glass in an annealing tunnel. But the only previously known rests, it is shown, were floor-rests. These rests, then, it may rationally be presumed, were in the contemplation of the patentee when he made his disclaimer, and so, indeed, he testifies. By interpreting the disclaimer as referring to such rests, reasonable effect is given to it, and justice is done to a meritorious inventor. In *Klein* v. *Russell*, 19 Wall. 466, we are told that, in construing a patent, "the court should proceed in a liberal spirit, so as to sustain the patent, and the construction claimed by the patentee himself, if this can be done consistently with the language he has employed."

In the introduction to his specification we find Tondeur declaring: "My device for removing the glass out of the furnace consists of two sets of bars of iron, one of which reciprocates between the other." The combination of these bars is the subject-matter of the first claim, and the specific function there assigned to the bars, $d$, is, to support the sheets of glass while the reciprocating bars, $d'$, are pushed towards the leer furnace. The substance of the claim is for bar-rests in combination with the transmitting bars. To import into the claim the arms $e'$ and $e'''$, and the hinge-joint, would be to introduce that which the patentee carefully omitted. The use of the reference letters, $d$ and $d'$, is merely to designate with greater certainty the elements of the combination claimed, and does not imply the limitation insisted on by the defendants. *Grier* v. *Castle*, 17 Fed. Rep. 523. The conclusion that no such limitation was intended is the clearer, and indeed becomes irresistible, when we regard the second claim of the patent, which in terms embraces the arms, $e'$ and $e'''$, in combination with the bars, $d$ and $d'$. To adopt the defendants' construction would be to make two distinct claims of the patent cover, not different things, but one and the same thing,—a result to be avoided, if possible.

Let a decree be drawn in favor of the plaintiff, and adjudging that the defendants infringe the first, third, and fifth claims of the patent.