## HOWARD *v.* DE CORDOVA.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 246. Argued and submitted April 17, 1900.—Decided May 14, 1900.

Following *Cooper* v. *Newell*, 173 U. S. 555, it is held that the judgment of the Texas court which is attacked in this case may be the subject of collateral attack in the courts of the United States, sitting in the same territory in a suit between citizens of Louisiana and citizens of Texas.

By c. 95, §§ 13, 14 of the Laws of Texas of 1847 and 1848, the affidavit by the plaintiff or his attorney as to the want of knowledge of the names of the parties defendant or their residence is made an essential prerequisite of the jurisdiction of the court to issue an order for publication. In the state court the affidavit was therefore jurisdictional in its character, and its verity was directly assailed by the averments of the present bill, which were admitted by the demurrer.

By their original bill the complainants, alleging themselves to be citizens of the State of Louisiana, complained against P. De Cordova, a citizen of the State of Texas, residing in Travis County, W. R. Boyd, F. E. Hill, Charles Robertson, J. M. Parker and George W. McAdams, citizens of Texas and residents of Freestone County, and against Joseph Smolenski, as to whom it was merely alleged he "is not an inhabitant of or found within this district." The grounds for relief which it is necessary to notice for the purposes of the questions before us, averred in the original bill and an amendment thereto, were as follows: That the complainants were the sole legal heirs of J. W. Zacharie, their deceased father, who during his lifetime was a citizen and resident of the State of Louisiana; that their said deceased ancestor owned a tract of eleven leagues of land

situated in Freestone and Anderson Counties, Texas, which had been granted to Manuel Riondo, by the states of Coahuila and Texas; that on the 26th of February, 1852, their said father made a contract with Jacob and Phineas De Cordova, by which the two last named persons agreed to have the grant above mentioned properly placed upon the records, to endeavor to effect compromises with certain parties holding claims by junior locations covering some of the land in the grant; that by the agreement in question all expenses except the taxes were to be paid by the two Cordovas, and in consideration of their services they were to receive one third of the receipts derived from the sale of all the land which might be covered by the compromises to be effected as aforesaid. It was alleged that in pursuance of the contract the two De Cordovas made various compromises with persons claiming under junior grants, and that the land thus embraced, the exact amount of which was not alleged, although it probably equaled ten thousand acres, was sold, and they received their share of the proceeds resulting from the sale. It was charged that in 1860 Jacob De Cordova acknowledged in writing that a full settlement had been made with him by Zacharie for all the lands as to which compromises had been made, and he therefore declared that all and every right which had vested in him by the contract in question had been liquidated and settled. It was then averred that on the 9th of November, 1895, Phineas De Cordova, with the object of defrauding complainants of their right and title to the land aforesaid, filed in the district court of Freestone County, Texas, a suit in partition, in which he falsely alleged himself to be the owner of an undivided one sixth of the land situated in the Riondo grant; that this suit was brought against the unknown heirs of J. W. Zacharie, deceased, and against Joseph Smolenski, whose residence was also in said suit alleged to be unknown. At the time this suit was thus brought by De Cordova it was averred that both he and Boyd, the attorney who represented De Cordova in the suit, knew who were the heirs of J. W. Zacharie and where they resided, but that in order to defraud and to avoid notice to them of the suit, and to obtain summons by publication as required by the law of Texas, an affidavit was

made by William R. Boyd, the attorney, that the heirs of Zacharie and their residences were unknown ; that, predicated upon this affidavit, the order for publication was given by the court; that instead of publishing the notice at the county seat, it was inserted in a newspaper in a remote portion of the county, and that the complainants had no knowledge whatever of the suit until long after its termination ; that in this suit for partition an attorney was subsequently appointed to represent the unknown and absent defendants ; that the law of the State of Texas required that a statement of facts should be made by the judge, but that one was prepared by Boyd, representing De Cordova, and the attorney who had been appointed to represent the absent defendants, which had for its effect to produce upon the mind of the court the impression that under the contract aforesaid, made between the Cordovas and Zacharie, the Cordovas were entitled as owners to one third of the eleven leagues of land ; that being misled to that conclusion, after proceedings as required in partition suits, a decree of partition was entered. The complaint as amended made other charges of fraud and deception which it is unnecessary to recapitulate. As to the other defendants to the bill, except Smolenski, it was averred that they had acquired with full notice of the fraud, which it was charged had been operated upon the Zacharie heirs by the partition suit as aforesaid, portions of the land in question. Smolenski was made a party to the bill because of the following averments : After the adjustment alleged to have been made between Zacharie and De Cordova, it was stated that Zacharie had sold all the land in August, 1865, to Smolenski for the price of $15,000, evidenced by his notes as follows : One for $3000 dated May 1, 1866, and twelve notes of $1000 each, payable yearly thereafter, with eight per cent interest per annum from May 1, 1866 ; that in the deed to Smolenski it was stipulated that a vendor's lien should be retained on the land to secure the payment of the notes, and it was provided that if any of the said notes should remain unpaid for six months after maturity, the vendor should have *ipso facto* the right to cancel and annul the sale and reënter and take possession of said lands. It was then averred that none of the notes given by Smolenski

had ever been paid, although past due for twenty or thirty years.

The prayer of the bill was that the proceedings in partition and the decree directing the same, be adjudged to be fraudulent and void; that the sales made to the other defendants be also declared fraudulent and void, and that the deed made by Zacharie to Smolenski to be set aside and cancelled, and the cloud thereby "cast on your orators' title to said land be removed."

To the bill and the amendment thereto the defendants demurred on the following grounds:

"First. It appeared from the face of plaintiffs' amended bill that the bill seeks to set aside, cancel and annul the judgment of the district court of Freestone County, State of Texas, and this court has no jurisdiction or power to cancel, set aside or annul the judgment of the state court, said court having jurisdiction both over the subject-matter and of the persons in said suit, said suit being a partition suit and the proceeding one *in rem.*

"Second. The amended bill shows upon its face that the object of the bill is to obtain a new trial in this court in cause No. 1960, tried and determined in the district court of Freestone County, Texas, as shown by the exhibits to the bill, under and in accordance with article 1375 of the Revised Statutes of Texas.

"That this proceeding is but a continuation of said suit, and this court has no jurisdiction of the same, but the district court of Freestone County, Texas, alone has jurisdiction of the same.

"Third. That the judgment of the district court of Freestone County, Texas, is valid and binding upon all of the parties to this suit, and this court has no jurisdiction, power or authority to review or to cancel and annul the same for the pretended fraud, as set out in plaintiffs' bill, or for any other cause therein stated."

After hearing, the court sustained the demurrer and dismissed the suit "for want of jurisdiction of the subject-matter in controversy," and the correctness of its action in so doing is the question which arises on this appeal.

*Mr. F. C. Zacharie* for appellants.

*Mr. R. H. Ward* and *Mr. Ashby S. James* for appellees, submitted on their brief.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

That the court erred in sustaining the demurrer and dismissing the suit for want of jurisdiction over the subject-matter of the controversy, has been in effect conclusively settled by this court in a case decided since the action of the court below was taken. *Cooper* v. *Newell,* 173 U. S. 555. In that case suit had been brought in a court of the State of Texas in the ordinary form of trespass, to try title by Peter McGrael against Stewart Newell, the defendant. It was alleged in the suit that the plaintiff was a resident of Texas, and that the defendant was also a resident and citizen of that State. An answer was filed in the cause by an attorney at law in the name of the defendant, and the suit proceeded to judgment. The controversy decided in *Cooper* v. *Newell* thus arose: Newell filed his bill in the Circuit Court of the United States in and for the Eastern District of Texas, in the ordinary form of trespass, to try title to recover the land to which the suit of *McGrael* v. *Newell* had .related. He charged that the defendants claimed title under the judgment rendered in that suit, but that they had no title because he, Newell, had never resided in the State of Texas; had not authorized any attorney to appear for him in the suit, and that, therefore, the proceedings in *McGrael* v. *Newell* were as to him *res inter alios·acta,* and wholly void. The controversy turned on whether Newell could be heard in the Circuit Court of the United States to attack the judgment of the state court, it being contended that the fact that Newell was represented by an attorney at law, who appeared and filed an answer in his name, was conclusively established by the judgment, which could not be assailed collaterally in a court of the United States, however much it might be subject to direct attack for fraud in the courts of the State of Texas. The contention was

not maintained, it being decided that as the charges went to the jurisdiction of the state court such question of jurisdiction could be examined in the courts of the United States whenever the judgment of the state court was presented as a muniment of title. The alleged facts in the case before us bring it directly within this ruling. By chapter 95, sections 13 and 14, Laws of Texas 1847 and 1848, page 129, the affidavit by the plaintiff or his attorney as to the want of knowledge of the names of the parties defendant or their residences, is made an essential prerequisite of the jurisdiction of the court to issue an order for publication. In other words, a summons by publication can only take place when the essential affidavit is previously made. In the state court the affidavit was therefore jurisdictional in its character; and its verity was directly assailed by the averments of the present bill which were admitted by the demurrer. Besides this decisive consideration, the proceedings in the state court, whatever may have been their efficacy as a defence to the charges of fraud, contained in the bill, as to which we express no opinion, were not adequate to defeat the jurisdiction of the Circuit Court of the United States. In other words, they address themselves not to the jurisdiction of the court, but to the merits of the cause. *Huntington* v. *Laidley,* 176 U. S. 668.

Whilst the demurrer which the court below maintained was predicated solely on the fact that there was a want of jurisdiction because of the proceedings had in the state court, which the bill assailed for want of jurisdiction and fraud, we have observed that the citizenship of Smolenski is not averred in the bill. This defect was curable by amendment, and it was not only within the power but the duty of the court, on its attention being called to the fact, to have allowed such an amendment to be made. It follows that

*The judgment must be reversed and the cause be remanded for further proceedings in conformity with this opinion, and it is so ordered.*