CHARLES A. MAU,

*vs.*

MONTANA PACIFIC OIL COMPANY, a corporation organized and existing under the laws of the State of Delaware, and W. A. BROWN, R. J. REYNOLDS, R. P. JACKSON, CHARLES A. MAU, E. B. EMRICK, ARTHUR F. CONRAD, H. B. CHESSHER, CHARLES H. HOLBROOK, JR., E. J. MCCABE, M. S. DARLING and MONTANA PACIFIC CORPORATION, a corporation organized and existing under the laws of the State of Nevada.

*New Castle, April* 4, 1928.

*Charles C. Keedy*, for petitioner.

*Caleb S. Layton*, of the firm of Marvel, Layton & Morford, for defendants Montana Pacific Oil Co., Brown, Reynolds, Jackson, Conrad, Mau, and Montana Pacific Corporation.

*E. Ennalls Berl*, of the firm of Ward & Gray, for defendants Emrick, Chessher, McCabe, and Darling.

THE CHANCELLOR. This case presents for decision the question of who were elected directors of Montana Pacific Oil Company, a corporation of this State, at the annual meeting of stockholders held at Great Falls, Montana, on December 13, 1927. Five directors were to be elected. Two tickets were presented, each containing the names of five persons. One ticket was presented by what, for convenience, will be referred to as the Mau faction, the other by what for convenience will be referred to as the Chessher faction. The inspectors reported 815,162 shares present out of a total of 862,795 shares outstanding, and that of said number the candidates of the Mau faction received a majority of votes, four of said candidates, the defendants Mau, Jackson, Brown and Reynolds, each receiving 461,792 votes and one, the defendant Emrick, who was on both tickets, receiving 781,814 votes. The candidates of the Chessher faction, other than Emrick, viz., the defendants Chessher, Darling, McCabe and Holbrook, were reported by the inspectors as having received 320,022 votes each. Thereupon the candidates of the Mau faction were declared elected.

The Chessher group, however, refused to recognize the result as declared and since then the candidates voted for by them have been claiming that they constitute the lawful board

of directors of the company. The jurisdiction of this court has been invoked by authority of *Section* 31 of the *General Corporation Law* (35 *Del. Laws*, c. 85, § 15) to determine the validity of the election of those who were declared to have been elected directors at the meeting referred to.

The crucial point upon which the dispute turns is whether or not 389,265 shares of stock standing in the name of and voted by the defendant Montana Pacific Corporation, a corporation of the State of Nevada, were lawfully outstanding and therefore entitled to vote.

The only particular in which the legality of the 389,265 shares is attacked and the consequent right to vote them is assailed is this—that the same were originally issued by the corporation in violation of the provisions of the "Blue Sky Law" of California (*Deering's Gen. Laws Cal.* 1923, *Act.* 3814), and having been so issued are by express provision of that law void. If they are void, it follows that they have no voting rights.

The history lying back of the questioned stock is as follows: Mau and one Arnold, in the State of California, in April and June, 1926, invited persons to subscribe to a syndicate, the purpose of which was to raise sufficient money to defray the expenses of themselves in going to Montana for the purpose of locating and obtaining if possible leases on promising oil fields. Any leases that might be obtained were to be taken in Mau's name. The subscribers, whose money was to finance the search and investigation, were to receive one-third of whatever profits Mau and Arnold might make. The sum of about seven thousand dollars was thus raised. Mau as trustee for the syndicate obtained numerous oil and gas leases and contracts with operators in Montana. He returned to San Francisco. He and Arnold reported to the syndicate subscribers what had been done in Montana in considerable detail. It was then agreed by all that a corporation should be formed under the laws of Delaware to take over the properties which Mau had acquired and that the stock issued by such corporation to Mau should be distributed by him to all parties interested on the basis of the agreements theretofore made, one-third going to subscribers to the syndicate fund in proportion to the respective amounts of

their subscriptions. The corporation was to be capitalized for one million shares each of the par value of one dollar. Mau caused the corporation to be formed under the laws of this State. The corporation as formed is the defendant, Montana Pacific Oil Company.

Mau prepared a written offer to sell to the corporation all the properties, etc., he had acquired for 501,000 shares of its capital stock. This offer was forwarded to Wilmington, Delaware, to be submitted at the organization meeting of the corporation to be held in that city. It was so submitted and accepted by the corporation. Later on, Mau re-submitted the same offer slightly modified to the directors at their meeting in Great Falls, Montana. The offer was again accepted by the corporation. By appropriate resolution the directors were authorized to purchase for the company the properties from Mau for the consideration of 501,000 shares of the company's stock and to issue to Mau or his nominees the stock in payment therefor.

Mau returned to San Francisco. The book of blank stock certificates was sent from Wilmington to Great Falls, Montana, from there forwarded to Mau in San Francisco, who caused one hundred and fifty certificates for the 501,000 shares to be filled in with the names of the persons entitled thereto and with the number of shares each was to receive as determined by the report of an auditor whom he designated to ascertain the proportional interests of the parties concerned. Having thus attended to the clerical end of the business, Mau went to Great Falls, Montana, where he as president of the corporation attached his signature to the certificates and Brown, the secretary, did the same affixing also the corporate seal. The stipulation of facts does not say so, but presumably the transfer of the properties was made contemporaneously with the attaching of the official signatures and the affixing of the corporate seal to the certificates.

The certificates evidencing the respective stock ownerships were thereupon delivered by Mau to the parties entitled thereto who lived in the State of Montana. Mau returned to California with the certificate book, delivered to the California residents their certificates and took receipts from them on the stubs of the book.

The 389,265 shares which are attacked in this suit are a part of the 501,000 shares issued under the above circumstances. The various holders of the 389,265 shares were solicited by Mau, Arnold and Smith to transfer their shares to Montana Pacific Corporation of the State of Nevada in exchange for its shares on a share for share basis. The solicitations were made to the California stockholders in the State of California and the exchange was effected outside of that State.

The foregoing are the principal facts which are amplified by the record in great detail. If the 389,265 shares are void shares, as is contended by the Chessher faction and therefore had no right to vote, then the ticket advocated by the Chessher group received the majority of votes cast at the stockholders' meeting; otherwise, the candidates of the Mau group received the majority vote.

The "Blue Sky Law" of California upon which reliance is placed as voiding the shares in question is in evidence and appears to be substantially the same as the acts of similar character found in many other jurisdictions. Its principal feature is one that aims to regulate the sale to the public of securities, whatever their form, whether by the issuing company, etc., or by brokers and agents. The method by which the scheme of regulation operates is centered around the requirement that a license must first be obtained from the Corporation Commissioner before any securities as the term is defined by the act can be sold within the State. At no time was a license obtained under the act by Mau or Arnold authorizing them to engage in the activities above detailed. Whether or not Mau and Arnold by their act of securing subscriptions to the original syndicate agreement without a license, thereby subjected themselves to the penalties of the act, it is the province of the California courts to determine. I do not see that it is a matter of any relevancy in this controversy, because the subscription agreement had no reference to the Montana Pacific Oil Company either as an existing or contemplated corporation. It was one thing, and the subsequent formation of the corporation was another. The one developed from the other, it is true. So far as a future corporation was concerned, the agreement was silent. Indeed if prospecting by Mau

and Arnold should result in finding nothing, there never would. have been a corporation. Having found desirable leases, etc., a corporation was then devised as the vehicle for conveying to syndicate subscribers the proportionate shares in the profits which the agreement gave them. So far as I can see, the sale of syndicate participations, if unlawful under the California act, might be so, and yet if the corporation should have subsequently appeared in. California and applied for a license to sell its stock, its application would have stood on its own merits uninfluenced by the assumed illegality of the sale of the syndicate participations. The various things done by Mau and Arnold in forming their original syndicate, whether in connection therewith they violated the California act, are not germane to the question of whether what the corporation did was in violation of the act. I accordingly discard from further consideration the syndicate subscription agreement about which so much has been said in the pleadings and argument.

The real question in this case arises out of Section 12 of the California act. That section provides:

"Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void. * * * "

This is the section which is relied upon by the Chessher group as rendering void the 389,265 shares of this Delaware corporation's stock. The rival group insists that the section cannot invalidate the stock for two reasons—first, because it was not issued in the State of California, and second, because even if it had been, the California Legislature is without power to declare void a stock issue of a foreign corporation.

Was the stock issued in California? It is conceded, as it must be, that if the stock was not issued in that State the California act cannot affect it. Under the outline of facts given at the outset, it seems clear to me that the stock was not issued in that State. It was issued in Montana. Mau was the holder of the legal title to property. He drafted an offer of sale. Assuming that he drafted his offer in San Francisco, a circumstance which the Chessher group insists upon but which Mau denies, the assumption is of no significance, for there is nothing in the California "Blue Sky Law" prohibiting a man from shaping up in

that State an offer of sale to be submitted to a corporation for its stock. The act does not prohibit the purchase of stocks. It is directed against their sale and issuance by companies, etc. By his offering letter, Mau was not offering stock for sale. He was offering to buy stock for property. The offer was accepted both in the State of Delaware and in the State of Montana. The stock to be given to Mau in exchange for his property was authorized, in those states to be issued. It was in law there issued. Possession of a certificate is not essential to the ownership of stock. *Chadwick v. Parkhill Corp., ante p.* 105, 141 *A.* 823; *State, ex rel. Cooke v. New York-Mexican Oil Co.,* 32 *Del.* (2 *W. W. Harr.*) 244, 122 *A.* 55; *Lippman v. Kehoe Stenograph Co.,* 11 *Del. Ch.* 190, 98 *A.* 943; *Allen v. Stewart,* 7 *Del. Ch.* 287, 44 *A.* 786.

"Shares of stock may be issued and outstanding where the corporation has accepted property under an agreement to give such shares therefor, although no certificates have been issued therefor." 5 *Fletcher, Cyc. of Corporations,* § 3478.

See, also, *American Pig Iron Storage Co. v. State Board of Assessors,* 56 *N. J. Law,* 389, 29 *A.* 160; *Flour City Nat. Bank v. Shire,* 88 *App. Div.* 401, 84 *N. Y. S.* 810.

What has just been said is enough to dispose of the case without considering the second point raised by the solicitor for the Mau faction. Notwithstanding it is unnecessary to say so, yet I am prompted to say that the second point seems to me to be sound in law. It is rather difficult to see on what ground a state may rest a power to declare void stock issued by a foreign corporation in compliance with the law of its domicile. The *General Corporation Law* of this State, under which the Montana-Pacific Oil Company was created, provides in *Section* 72 that the situs of the stock "for all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, * * * shall be regarded as in this State." *Revised Code,* 1915, § 1986. If one state has the power to enact laws declaring void as unlawfully issued the stock of a corporation of a sister state, lawfully issued under the law of the domicile, it is apparent that inextricable confusion is in danger of being introduced into the internal affairs of corporations. The membership in and the

internal life of a state's corporate creature will be subject to as many conflicting masters as there are foreign jurisdictions. The logical result of such a doctrine is that one state has the power in effect, though not perhaps in form, to destroy the creatures of a sister sovereignty, for if it can nullify its stock for one reason it can for another. I do not think the State of California in the enactment of *Section* 12 of its "Blue Sky Law" meant to declare void the stock issues of any corporation other than those of its own creation, over which of course it has complete control. Though the language of the section is general and in point of form applicable to all corporations, foreign as well as domestic, yet it is hardly to be doubted but that the courts of that State would, in construing the section, restrict the application of its general language to the field of its appropriate domestic application. The Supreme Court of that State in *Miles v. Woodward*, 115 *Cal.* 308, 46 *P.* 1076, has expressed views which indicate that such would be the result if the question should arise in the California courts. In that case the court said:

"Over the organization and internal government of foreign corporations it [the Legislature] has no such powers [powers of full control]. The laws of the state do not have extraterritorial force. It would be meaningless for this State to try to legislate upon the internal affairs of such foreign corporations, and it has not attempted to do so."

In *Black v. Zacharie*, 3 *How.* 483, 11 *L. Ed.* 690, the Supreme Court of the United States said:

"From the nature of the stock of a corporation, which is created by and under the authority of a State, it is necessarily, like every other attribute of the corporation, to be governed by the local law of that State, and not by the local law of any foreign State."

In *Masury v. Arkansas Nat. Bank* (*C. C.*) 87 *F.* 381, the general principle which accords supremacy to the law of the domicile in all matters touching the internal affairs of a corporation was applied so as to subject transfers of stock to the law of that domicile rather than to the law of the place where the transfer is made. And similarly in *Mackin v. Nicollet Hotel, Inc.* (*D. C.*) 10 *F.* (2d) 375, the law of the corporation's domicile was held to prevail over the law of another state in the matter of regulating the time within which proxies may be voted. While

the power of a state to exclude a foreign corporation from transacting domestic business within its borders except upon such terms and conditions as it may see fit to impose, is undoubted, yet such power, according to the authority of 8 *Fletcher, Cyclopedia of Corporations*, § 5807, does not "extend so far as to give the legislatures of a state power to regulate or control the internal affairs of a foreign corporation."

No case has been cited, nor has a diligent search revealed one, where the power is sustained by which one state can by legislation determine who shall be stockholders in a corporation created by the laws of another state. All the cases cited by the solicitor for the Chessher faction are cases involving criminal action against persons accused of selling stock in the jurisdiction where prosecuted without a license so to do having been previously obtained, or where actions to rescind in one form or another were entertained because of unlicensed sales. Cases of that sort present an entirely different question from that with which we are here concerned. It is undoubtedly within the power of a state to regulate the sale of securities, whether domestic or foreign, to the public and to inflict penalties upon all those who make such sales in violation of the statutes. It is doubtless likewise equally competent for the state enacting such laws to provide for the voiding of stock of its own creatures if sold in violation of its law. But no court has gone so far as to say that the legislative power can extend so far as to operate extra-territorially by way of declaring to be void the stock of a corporation created under the law of another sovereignty.

It follows from the foregoing that even if the Montana Pacific Oil Company had issued its stock in California without complying with the "Blue Sky Law" of that State, the stock so issued cannot be regarded as void stock. The only consequence that can flow from the illegal act, if such it was, is that the company and those aiding and abetting it are subject to the penalties provided by the act.

On the brief for the Chessher faction something appears to be made of the fact that the exchange of stock by the Montana Pacific Corporation of Nevada for stock of the Montana Pacific Oil Company of Delaware held by individuals in San Francisco

was in violation of the California "Blue Sky Law." But nothing can be made of that fact if it be so. This is for the reason, in addition to what has already been said, that even though *Section 12* could avoid the stock of the Nevada company issued in exchange, it would-leave untouched the Delaware stock acquired by it. The section assumes to render void stock issued and not acquired by the issuing corporation.

One director, Emrick, was elected by the stockholders at the December meeting. He was on both tickets. He was notified by Reynolds of the Mau faction, the secretary of the newly elected board, that an organization meeting of the board would be held. In reply to the notice Emrick wrote the following letter:

"January 21, 1928.

"Mr. R. J. Reynolds, Rainbow Hotel, Great Falls, Montana—Dear Mr. Reynolds: You of course understand that I do not believe that you legally are the Secretary or a member of the Board of Directors of the Montana Pacific Oil Co.

"Therefore, your letter of January 19, 1928, is, in my opinion, not of any official interest or legal notice to me as a member of the Board of Directors of the Montana Pacific Oil Co. I desire to again register with you my objection to your possession of the records and books of the Montana Pacific Oil Co., and the attempts being made by you and others to manage the affairs of said corporation.

"Yours very truly,

"[Signed] E. B. EMRICK."

The board treated this letter as a letter of resignation from the board and proceeded to elect the defendant Conrad to the supposed vacancy. In taking this action, the board was in error. Emrick's letter was not a letter of resignation. All it amounted to was this, that he did not regard Reynolds as the secretary nor the other persons attempting to manage the corporation as his associates on the board. Others, he evidently thought, viz., the Chessher candidates, had been elected with him to the board. There was, in this state of the matter, no vacancy caused by resignation on Emrick's part.

The decree will be that Montana Pacific Corporation had the right to vote the 389,265 shares of stock standing in its name at the annual stockholders' meeting of December 13 last, and that

the following were duly elected directors at said meeting and are now entitled to hold office as such directors, viz., Mau, Reynolds, Brown, Emrick and Jackson; and that Chessher, Darling, McCabe and Holbrook were not elected directors at said meeting and are not therefore entitled to hold office as such directors.

Let a decree be prepared accordingly.