## HERTZ DRIVURSELF STATIONS, Inc., v. RITTER.
### No. 8282.

Circuit Court of Appeals, Ninth Circuit.
July 15, 1937.

O. O. Collins and C. W. Cornell, both of Los Angeles, Cal., for appellant.

Nicholas C. Bleecker and Donald Armstrong, both of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an equity suit brought by appellee to rescind a contract executed by appellant and appellee for the sale of corporate stock upon the ground that the transaction for the transfer of the stock was a violation of the California Blue Sky Law (St. Cal.1913, p. 715, as amended). The lower court held the contract of sale void and rendered judgment against appellant for the value of appellee's business which had been transferred to appellant as consideration for the stock. The appeal is from that decree.

The appellant contends that the transaction was completed outside of the State of California and hence that the law of California was not applicable thereto. W. F. Fielder, vice president and general manager of appellant after its organization, negotiated the transaction on behalf of appellant and sent a written offer dated San Francisco, California, March 18, 1926, to appellee at Los Angeles, California. In this letter, Fielder stated that the arrangement with appellee had been taken up with the executive committee of the appellant corporation and approved by them, and in it was set out the provisions of the purchase plan which included a provision that

the agreement was to be effective March 12, 1926, the day before the appellant was organized. This provision was inserted for accounting purposes. Appellee signed the letter accepting the provisions thereof March 24, 1926, in Los Angeles, California.

By the contract appellee agreed to sell to appellant his business which he operated under the name of the "Metropolitan Driv-urself Company," and appellant agreed to purchase the business for the consideration of $1,000 in cash and 75 shares of preferred stock and 194 shares of common stock of the appellant corporation. Appellee transferred his business to appellant who paid him the $1,000 and delivered the stock to appellee in California by registered mail.

The corporation was reorganized in the fall of 1929 with the consent of appellee, who received 75 shares of the common capital stock of the reorganized company in lieu of the preferred and common stock he had received for his business.

In March, 1933, appellee, by written notice dated March 27, 1933, notified appellant in writing that he rescinded the contract and offered to return to appellant everything of value he had received from appellant.

The California Corporate Securities Act at the time of the original transaction provided that:

"No company shall sell * * * or offer for sale, negotiate for sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." Cal.Stats.1917, c. 532, § 3, p. 675.

"Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void." Cal.Stats.1917, c. 532, § 12, p. 679.

Other provisions of the act make it expressly applicable to corporations organized under the laws of other states.

The appellant did not apply for nor obtain a permit authorizing it to sell or issue to appellee the shares of stock transferred to him in exchange for his business.

Under the decision of the Supreme Court of California in Pollak v. Staunton, 210 Cal. 656, 293 P. 26, stock issued in violation of the California Blue Sky Law and a sale of stock in violation of the act are void, and the purchaser, if ignorant of the illegality of the issue and sale, may rescind the sale and recover the purchase price.

Appellant assigns as error the finding of the lower court that the contract between appellee and appellant "was negotiated, signed by both parties, and consummated in the State of California," and contends that there is no evidence that the stock was not issued in Nevada. Appellant's theory is that the acceptance of the letter by appellee was merely an offer on his part, later accepted by the corporation; that "the issuance of the stock must be presumed to have taken place in Nevada"; and that "he [appellee] became a stockholder as soon as his offer was accepted, and this condition would exist without the issuance or delivery of a certificate."

In the case at bar, the contract evidenced by the letter of March 18, 1926, was performed, in so far as transferring title to the stock is concerned, by the delivery of the certificates of stock by mail to the appellee in California. There is no evidence that delivery was made to anyone outside the State of California on behalf of appellee or that he authorized such a delivery. While it is true that delivery of the stock certificates to the purchaser of stock is not in every case essential to the passing of title, the parties of course may by their contract show that they intend otherwise. See Helvering v. Post & Sheldon Corporation (C.C.A.) 71 F.(2d) 930. Nevertheless, where there is nothing in the agreement of the parties to the contrary, the intent ordinarily is that a contract for the sale of stock is performed, and title to the shares of stock transferred upon delivery of the stock. See Robbins v. Pacific Eastern Corporation (Cal.Sup.) 65 P.(2d) 42, and cases therein cited. See, also, In re Broomhall, Killough & Co. (D.C.) 47 F.(2d) 948; Eavenson v. Commissioner (C.C.A.) 51 F. (2d) 664; Agar v. Orda, 144 Misc. 149, 258 N.Y.S. 274; Rowell v. Fincher, 33 Ga.App. 506, 126 S.E. 886; Rock v. Gustaveson Oil Co., 59 Utah, 451, 204 P. 96.

Although ordinarily in a contract for sale of goods or stock it will be presumed in the absence of an agreement or circumstances showing the intent of the parties to be otherwise that the place of delivery is the seller's place of business (Neer v. Lang [C.C.A.] 252 F. 575), it is clear that in this case the intent of the parties was that the place of delivery to appellee was in California. The negotiations with appellee were carried on in Cali-

fornia. The appellant corporation had been organized at the time Fielder wrote the letter of March 18, 1926, and he was its vice president and general manager. It was an offer by appellant made in California and accepted by appellee in California. The stock was delivered to and accepted by appellee in California.

The presumption that the parties intended to enter into a valid agreement and, therefore, must be deemed to have intended delivery of the stock in Nevada, cannot stand against evidence that the contract was made and the stock delivered in California. The transaction was governed by the laws of California, and if invalid thereunder cannot stand. The law of California on that subject has recently been interpreted and declared by the Supreme Court of California in the case of Robbins v. Pacific Eastern Corporation, 65 P.(2d) 42, 61, decided February 10, 1937, where it was held that the validity of stock issued without a permit from the California Corporation Commissioner is to be determined by considering whether or not the contract for the sale of the stock was executed within the State of California, thereby passing title to the stock to the purchaser within the state, and that if title to the stock sold without a permit is transferred to the purchaser in California the stock is void. It was further held that although an executory contract for the sale of stock might be invalid because entered into in California, that would not affect the validity of an executed sale of the stock, or the validity of the stock thus transferred if the contract was performed and title passed to the stock outside the state of California. The court said: "It does not impair the validity of a sale when made that the prior contract to make it was illegal. This is so because the sale or executed contract may legally stand on its own feet, independent of the prior executory contract."

Our decision in Re Motor Products Mfg. Corporation, 85 F.(2d) 318, August 3, 1936, rehearing denied with opinion May 3, 1937 (C.C.A.) 90 F.(2d) 8, interpreting the Blue Sky Law of California, is in accord with the more recent decision of the Supreme Court of California, as is our decision in Los Angeles Fisheries v. Crook, 47 F.(2d) 1031.

In Re Motor Products Mfg. Corporation, supra, the question decided by this court was the validity of debentures alleged to have been issued in violation of the California Securities Act and involved a claim in bankruptcy based upon the debentures against the bankrupt corporation which had issued them. In that case we followed our previous holding in Los Angeles Fisheries v. Crook, 47 F.(2d) 1031, supra, and held that where negotiations and the contract for the sale of the stock were in California, but delivery was in St. Louis by an agent of the purchaser, the law of California did not govern the issuance of the stock.

Appellant relies upon Mau v. Montana Pacific Oil Co. (1928) 16 Del.Ch. 114, 141 A. 828, to show that the stock was not issued in California and to show also that the law of California cannot control the validity of the stock issued by a corporation organized under the law of another state. That case involved the validity of stock for voting purposes of a Delaware corporation allegedly issued in violation of the Corporate Securities Act of California. In that case the Court of Chancery of Delaware held that the Legislature of a state did not have power to declare void the stock of a corporation created by the laws of another state even though issued in the former state in violation of its laws. The California Supreme Court has declined to follow the doctrine of that case [Gillis v. Pan American Western Petroleum Co., 3 Cal.(2d) 249, 252, 44 P.(2d) 311], and we have held that in the sale and transfer of shares of capital stock in California of a foreign corporation doing business therein the California Blue Sky Law controls. London, Paris & American Bank v. Aronstein (C.C.A.) 117 F. 601, 609. We need not decide that question in the case at bar for the reason that the rescission of the sale of the stock will restore to the appellee the consideration he paid for the stock. As no permit had been obtained for the sale of the stock, the sale was in violation of the act and void and appellee was entitled to rescind, restore the stock and recover the purchase price. Pollak v. Staunton, 210 Cal. 656, 293 P. 26; Tatterson v. Kehrlein, 88 Cal.App. 34, 263 P. 285; Reno v. American Ice Mach. Co., 72 Cal.App. 409, 237 P. 784.

Appellant contends that the stock transferred to appellee may have been transferred to him by some person or corporation to whom it had been lawfully issued. No evidence supporting such a theory is pointed out by appellant. The evidence is to the contrary.

█ Appellant contends that when appellee in the fall of 1929 consented to the reorganization of the appellant company and exchanged the stock he received for the transfer of his business to appellant for other stock of appellant, which stock appellant contends was lawfully issued, he made it impossible to rescind and return what he had received in the original transaction.

The sale of the stock being void, it could not be ratified by the exchange of stock pursuant to the recapitalization of appellant. Pollak v. Staunton, 210 Cal. 656, 293 P. 26, supra; De Mille Productions v. Woolery (C.C.A.) 61 F.(2d) 45. Appellee offered to return to appellant the shares of stock he had received in exchange for those originally issued to him and the $1,-000 paid him at the time of the transfer of his business. Appellee is not prevented from rescinding because of the exchange of stock made before he was aware that the sale of the stock first issued to him was in violation of the Corporate Securities Act and void.

█ There is no merit in appellant's contention in its brief that "rights of third parties have intervened and it would be inequitable to permit plaintiff to rescind after over eight years' delay in bringing suit." Appellant relies upon Michell v. Grass Valley Gold Mines Co., 206 Cal. 609, 275 P. 418. In that case, the plaintiffs were promoters, organizers, and directors of the company and participated in the issuance of the stock, and third parties had invested in reliance upon the property turned over by plaintiffs. These factors are not present in the case at bar. See Randall v. California Land Buyers Syndicate, 217 Cal. 594, 20 P.(2d) 331.

█ Appellant contends that this action is barred by the statute of limitations. The agreement which appellant seeks to rescind was made in March 1926. This suit was filed May 29, 1934. In MacDonald v. Reich & Lievre, Inc., 100 Cal.App. 736, 281 P. 106, it was held that in an action to recover money paid for stock sold without a permit in violation of the California Blue Sky Law the applicable statute of limitations is subdivision 4 of section 338 of the Code of Civil Procedure, which provides for a three year limitation in an action for relief on the ground of fraud or mistake, and that the cause of action in such case does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Appellant contends that appellee knew or had knowledge of facts and circumstances sufficient to put a reasonable person upon inquiry more than three years before this suit was filed, of the facts upon which he bases his action and, consequently, the three-year statute of limitations under section 338, Cal.C.C.P., applies whether this be considered a liability created by statute or an action for relief on the ground of fraud. The finding of the trial court in that regard is that the plaintiff did not know or discover the lack of a permit until a few days prior to March 28, 1933, and was not put upon inquiry until that time and that between March 28, 1933, and April 1, 1934, negotiations were under way between the parties concerning the subject-matter of the action. This finding is supported by the plaintiff's testimony. There is testimony by defendant's witnesses which tends to show that the plaintiff did ascertain that no permit had issued as early as 1929, but all these witnesses testified before the court and its finding is binding upon us.

The appellant set up the laches of the appellee in rescinding the contract of sale of the stock and assigns and specifies error in the findings and conclusions of the trial court against this defense. The appellant does not specifically count upon the delay between January 3, 1933, when the appellee discovered the lack of a permit, and March 28, 1933, when notice of rescission was served, nor in delaying the commencement of the action pending negotiations with it over the appellee's rights from March 28, 1933, to April 1, 1934.

█ The appellant's answer alleged that the complaint did not state facts sufficient to state a cause of action.

Appellant contends in its argument before this court, and in its brief, that appellee did not allege that the stock was issued or transferred within the State of California and thus that the complaint does not state a cause of action. There is no assignment of error predicated upon any ruling of the trial court on that question. The parties treated the place of the contract as one of the issues of fact to be litigated. The whole case of plaintiff depended upon the applicability of the law of California to the transaction of exchange of appellee's business for appellant's stock. The trial court found that the contract was negotiat-

ed, signed by both parties, and "consummated in the state of California" and that finding is supported by the evidence. The complaint is defective in that it is not specifically alleged that the transaction occurred in California, and it is not specifically alleged that the Corporation Commissioner of California did not issue a permit.

It is alleged in the complaint that the appellant "falsely" and "fraudulently" offered to purchase appellee's property in exchange for its stock. This allegation is no doubt framed in view of the decisions of the California Supreme Court which hold that the offer of stock not authorized by a permit is a fraudulent representation that a permit has issued and that the stock is valid. MacDonald v. Reich & Lievre, supra; Gillis v. Pan American Western Pet. Co., supra.

It is alleged that the appellee's attorney told him that no permit had issued and that the stock was void. In avoidance of the bar of the statute of limitations, and in anticipation of the defense of laches, the appellee alleges facts in explanation of his failure to discover earlier that a permit had not issued.

The controversy between the parties was clear and the findings of the trial court support its decree. There is nothing to indicate that the appellant was in any wise misled by the defects in appellee's · complaint or that on a new trial the evidence would be any different. Under these circumstances we are at liberty to deem the complaint amended to conform to the evidence and to the trial court's finding. A. Coolot Co. v. L. Kahner & Co. (C.C.A.) 140 F. 836; United Kansas Portland Cement Co. v. Harvey (C.C.A.) 216 F. 316; Nash v. Pennsylvania R. Co. (C.C.A.) 60 F.(2d) 26; Schmidt v. United States (C.C. A.8) 63 F.(2d) 390, 391, notes 4 and 5; Howard v. DeCordova, 177 U.S. 609, 614, 20 S.Ct. 817, 44 L.Ed. 908; Norton v. Larney, 266 U.S. 511, 515, 516, 45 S.Ct. 145, 147, 69 L.Ed. 413; Drilling & Exploration Corporation v. Webster (C.C.A.9) 69 F. (2d) 416, 418.

No point is made by the appellant because of the failure of the decree to order a return of its stock, and we assume that the certificate of stock deposited in court is available to the appellant.

The decree is affirmed.