(No. 38839.—

UNITED AIR LINES, INC., Appellee, *vs.* ILLINOIS COMMERCE COMMISSION, Appellant.

*Opinion filed May 20, 1965.*

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD G. FINNEGAN and HAROLD A. COWEN, Assistant Attorneys General, of counsel,) for appellant.

MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of Chicago, (H. TEMPLETON BROWN, J. STANLEY STROUD, and WILLIAM E. DOYLE, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Cook County reversing an order of the Illinois Commerce Commission wherein the Commission found that it had jurisdiction over certain securities issued by United Air Lines, Inc. A question arising under the Federal constitution gives us jurisdiction to entertain the appeal.

United Air Lines, Inc., hereinafter referred to as United, is a corporation organized under the laws of Delaware, and

engages in the air transportation of persons, property and mail in interstate commerce pursuant to a certificate of convenience and necessity issued to it by the Civil Aeronautics Board in accordance with the Federal Aviation Act, as amended. (49 U.S.C.A., §§ 1301 *et seq.*) Its executive offices are in Illinois, but its central operating base and chief overhaul base are in other States, and its interstate system serves a total of 110 cities in 32 States, the District of Columbia and Canada. At the time of hearings before the Commission in the instant case, United's system consisted of 11,613 route miles, and, following a merger with Capital Airlines subsequent to the hearings, the system expanded to 17,420 route miles. Of these, only 158 miles, or 1.36% before the merger and 00.90% after the merger, are within the borders of Illinois. In a typical year before the merger, United flew approximately 5.2 billion revenue passenger miles, of which only 4.7 million, or 00.092%, resulted from the movement of intrastate passengers between Chicago and Moline, United's only intrastate Illinois route. Fewer than 20% of the passengers on flights between Chicago and Moline are intrastate passengers; the balance of more than 80% are interstate passengers.

The Chicago-Moline intrastate route is operated pursuant to a certificate of convenience and necessity granted by the Illinois Commerce Commission and, in such regard, it is conceded by United that such operation is subject to the jurisdiction and supervision of the Commission pursuant to the provisions of the Illinois Public Utilities Act. (See: Ill. Rev. Stat. 1959, chap. 111⅔, pars. 8 and 10.3.) Section 21 of the act, around which the present controversy centers, authorizes a public utility to issue stocks and other securities, provided the utility "shall first have secured from the commission an order authorizing such issue and stating the amount thereof and the purpose or purposes to which the issue or the proceeds thereof are to be applied," and provided further "that, in the opinion of the commission, the

money, property or labor to be procured or paid for by such issue is reasonably required for the purpose or purposes specified in the order, * * *." (Ill. Rev. Stat. 1959, chap. 111⅔, par. 21.) The same section further provides: "The commission shall have the power to refuse its approval of applications to issue securities, in whole or in part, upon a finding that the issue of such securities would be contrary to public interest * * *," and it is provided in section 23 that stocks and other securities issued without authorization by the Commission "shall be void." Ill. Rev. Stat. 1959, chap. 111⅔, par. 23.

And while there was once some doubt as to whether the regulatory provisions of section 21 were intended to apply to public utilities incorporated or organized under the laws of another State, (see: *Missouri Pacific Railroad Co.* v. *Public Utilities Com.* 292 Ill. 427,) that uncertainty was removed in 1951, (Laws of 1951, 402 at 404,) when the section was amended by the addition of a proviso which states: "The provisions of this section shall not apply to public utilities which are not corporations duly incorporated under the laws of this State to the extent that any such public utility may issue stock, bonds, notes or other evidences of indebtedness not directly or indirectly constituting or creating a lien or charge on, or right to profits from, any property used or useful in rendering service within this State." Ill. Rev. Stat. 1959, chap. 111⅔, par. 21.

Sometime prior to December, 1960, United issued securities totaling in excess of a quarter billion dollars, the proceeds of which were used principally to purchase jet aircraft and related equipment, none of which is used on the Chicago-Moline route. Included in the securities were unsecured notes, debentures, and preferred and common stocks, the stocks being issued to pay stock dividends, to carry out United's obligations under a stock option plan, to effect the merger with Capital Airlines, and to allow for the possible conversion of certain debentures into stock. Under

force of the provisions of sections 21 and 23, United, at various times prior to December 14, 1960, filed applications for approval and authority to issue different types of securities. In each instance, however, the applications requested that the Commission enter an order disclaiming jurisdiction. By the order involved in this appeal, entered April 24, 1963, the Commission found that it had no jurisdiction over the unsecured notes and unconvertible debentures, but that it did have jurisdiction over the preferred and common stocks and the debentures convertible into stocks. As to the latter securities, the order also directed further proceedings for fixing the amount of fees permitted by section 31 to be charged "every public utility receiving permission under this Act" for the issuance of securities "authorized by the commission." Ill. Rev. Stat. 1959, chap. 111⅔, par. 31.

Upon appeal by United, the circuit court of Cook County reversed the order, finding that the Commission had no jurisdiction over the issuance of the stocks involved, and this direct appeal by the Commission has followed. As grounds for reversal, the circuit court held: (1) that the State of Illinois lacks the power to regulate the issuance of securities by foreign corporations; (2) that even if such power exists, the preferred and common stocks issued by United are exempt from the jurisdiction of the Commission by the express language of the 1951 amendment to section 21; and (3) that even if the foregoing premises be untrue, that the application of the regulatory provisions of section 21 to an interstate carrier such as United results in an undue burden on interstate commerce in violation of the third clause of section 8 of article I of the constitution of the United States. These findings shape the issues on this appeal.

The contention that the State of Illinois lacks the power to regulate or supervise the issuance of securities when the public utility is a foreign corporation is predicated chiefly

upon *Missouri Pacific Railroad Company* v. *Public Utilities Com.* 292 Ill. 427, where there is indeed factual analogy. In our view, however, the pertinent part of that decision turned, not upon a finding that Illinois "lacked the power" to regulate, but upon a construction that section 20 of the Public Utilities Act, (see: Hurd's Stat. 1917, chap. 111a, par. 20 and Ill. Rev. Stat. 1959, chap. 111⅔, par. 20,) manifested a legislative intent that the regulatory powers enumerated in section 21 were to be exercised only with respect to public utilities incorporated under the laws of this State. This being so, the *Missouri Pacific* decision no longer has value as a precedent in this case. For in the 1951 amendment to section 21, as previously noted, the legislature unmistakably expressed its intent to extend the reach of the section, though in a limited degree, to public utilities incorporated under the laws of another State.

While some jurisdictions appear to hold to the contrary, (e.g. *Mau* v. *Montana Pacific Oil Co.* 16 Del. Ch. 114, 141 Atl. 828; *Southern Sierras Power Co.* v. *Railroad Commission,* 205 Calif. 479, 271 Pac. 747,) we expressly reject the notion that a public utility's status as a foreign corporation deprives this State of all supervisory and regulatory powers over the securities issued by such a corporation. The power of a State over foreign corporations transacting business within its borders is as extensive as its powers over domestic corporations. And in our Business Corporation Act, the provisions of which United is deemed to have known and to have given its consent when it elected to do business here, (*Cincinnati, Indianapolis and Western Railroad Co.* v. *Barrett,* 406 Ill. 499; *McCormick* v. *Statler Hotels Delaware Corp.* 30 Ill.2d 86; *German-American Coffee Co.* v. *Diehl,* 216 N.Y. 57, 109 N.E. 875, 876-877,) it is stated: "A foreign corporation * * * shall * * * enjoy the same, but no greater, rights and privileges as a domestic corporation * * * and * * * shall be subject to the same duties, restrictions, penalties, and liabilities now or

hereafter imposed upon a domestic corporation of like character." (Ill. Rev. Stat. 1959, chap. 32, par. 157.103.) Again, it is said in 8 A.L.R. 1185, 1187: "A state, acting through its legislature, in a proper case, and subject only to the limitations of the Federal and state constitutions, has the power to control and regulate domestic and foreign corporations equally, insofar as they operate within the state, including the issuance of corporate stock, * * *." (See also: *State ex rel. Weede v. Iowa Southern Utilities Company of Delaware*, 231 Iowa 784, 2 N.W.2d 372; *State ex rel. Weede v. Bechtel*, 239 Iowa 1298, 31 N.W.2d 853.) Exclusive of its claim of a violation of the commerce clause of the Federal constitution, United has suggested no constitutional prohibitions or guarantees which prevent the exercise of the regulatory powers in section 21 against a foreign corporation. To the contrary, its position would have us discriminate against public utilities that are domestic corporations, and apply the law unequally, by permitting foreign corporations to transact the same business in this State under more favorable conditions.

In the present case, United, by its entry into Illinois, is deemed to have known about and consented to the regulatory provisions of section 21, and such consent is, in effect, a condition upon which the right to transact business within our boundaries depends. What is more, it is manifestly clear that when a public utility is concerned, there is presented a "proper case" for the State to exercise regulatory powers over the issuance of its securities. Service to the public is the very reason for the existence of a public utility. The legislature, as the representative of the public, must necessarily concern itself with the continued financial reponsibility and ability of the utility to render its service, and must likewise insure that those who operate it do not "lead it into paths of ruin." (*German-American Coffee Co. v. Diehl*, 216 N.Y. 57, 109 N.E. 875-877.) Accordingly, it is

our opinion that the circuit court's finding of a "lack of power" was erroneous.

The 1951 amendment to section 21, to which we have previously alluded, provided in effect that foreign corporations might, without subjecting themselves to the regulatory authority of the Commission, issue "stock, bonds, notes or other evidences of indebtedness not directly or indirectly constituting or creating a lien or charge on, or right to profits from, any property used or useful in rendering service within this State." (Ill. Rev. Stat. 1959, chap. 111⅔ par. 21.) Reasoning that a stockholder has no "right to profits," but only a right to dividends when the corporate directors see fit to declare them, (see: *Alsop* v. *DeKoven,* 107 Ill. App. 190, aff'd 205 Ill. 309; *Ford* v. *Ford Manufacturing Co.* 222 Ill. App. 76; *Treves* v. *Menzies,* 37 Del. Ch. 330, 142 A.2d 520,) United contends that the preferred and common stocks it issued are exempt from the jurisdiction of the Commission by the express language of the amendment. We think the amendment is broader both in purpose and in effect. It contemplates an "indirect" as well as a "direct" right to profits, and there can be little doubt that ownership of United's stock results in an indirect right to profits. As was stated in *Bowman* v. *Armour and Co.* 17 Ill.2d 43, 51 : "A share of stock in a corporation is a unit of interest in the corporation and it entitles the shareholder to an aliquot part of the property or its proceeds to the extent indicated. The interest of a shareholder entitles him to participate in the net profits in proportion to the number of his shares, * * * and, upon dissolution or liquidation, to receive his portion of the property of the corporation that may remain after the payment of its debts." We hold that the stocks issued were not exempt.

Coming to the question of whether the application of section 21 to an interstate carrier such as United results in an undue burden on interstate commerce, no claim is made

that the Federal government has preempted the narrow field involved, nor is it contended that our statute discriminates against interstate commerce. Instead, broadly speaking, it is the contention of United that the regulation of the issuance of the securities of an interstate carrier such as itself is a matter beyond State action, and that the attempt at regulation, without more, imposes an undue burden on interstate commerce. The Commission, for its part, asserts that our statute is a valid exercise of the police power which is based upon and permitted by the strong local interest in the financial responsibility of United and its continued ability to provide service for the citizens of this State, and that the application of the statute to United does not result in an undue burden on interstate commerce.

Although the commerce clause of the Federal constitution confers on the national government the power to regulate commerce, it has long been established that a State may regulate matters of local concern over which the Federal authority has not been exercised, even though the regulation has some impact on interstate commerce, provided, however, that it safeguards an obvious State interest and that the local interest at stake outweighs whatever national interest there might be in the prevention of the State restrictions. (*Parker* v. *Brown,* 317 U.S. 341, 87 L. ed. 315; *Southern Pacific Co.* v. *State of Arizona ex rel. Sullivan,* 325 U.S. 761, 89 L. ed. 1915; *Cities Service Gas Co.* v. *Peerless Oil & Gas Co.* 340 U.S. 179, 95 L. ed. 190; *Brotherhood of Railroad Trainmen* v. *Terminal Railroad Association of St. Louis,* 379 Ill. 403.) As is stated in 15 Am. Jur. 2d, Commerce, § 20, p. 653: "In determining whether, in the absence of conflicting congressional legislation, a state regulation of interstate commerce contravenes the commerce clause, the determinative factors are the nature and extent of the burden imposed by the regulation, and the relative weights of the state and national interests involved." A weighing and consideration of these factors in the record

at hand leads us to conclude that the application of section 21 to United results in an undue burden on interstate commerce.

The power given the Commission to approve or disapprove the issuance of stocks and securities necessarily affects United's interstate activities, for if it cannot secure funds through the sale of its stocks and securities its continued existence in the highly competitive interstate air transportation industry would be difficult, if not impossible, to sustain. (*Cf. Whitman* v. *Northern Central Railway Co.* 146 Md. 580, 127 A. 112, 115.) Indeed, a substantial part of the securities here involved were used for the acquisition of jet aircraft, without which effective and competitive interstate air transportation could not be furnished in this day and age.

If Illinois can exercise the power to approve or disapprove the issuance of United's securities because it transacts business here, then so also can each of the other sixteen States where United provides intrastate service. There would thus be a total of seventeen jurisdictions asserting the power to approve or reject any issuance of stock proposed by United. The task of seeking and gaining approval from such a number of States would be unjustifiably expensive, time consuming and burdensome, and could create delay which would directly impair the usefulness of United's facilities for interstate traffic. Just as important, each independent regulating authority would be required to apply locally defined standards of public interest and locally defined rules in order to approve or disapprove, or, as our statute suggests, (sec. 21,) to conditionally approve a single issuance of securities. The result, we believe, would be chaotic. The issuance of securities is a single, indivisible act. It cannot be fractionalized and given portions allocated to specific States.

It is suggested by the Commission that it is not proper to consider the "possibility" of multi-state regulation and

its effects, the implication being that the limitations on the powers of a State over interstate commerce could not come into effect until there is an actual attempt at multiple regulation or an actual obstruction of commerce. The cases, however, reject this view and demonstrate that the possibility of conflict, or dual regulation, may be sufficient to curtail powers sought to be asserted by an individual State over interstate commerce, where such commerce might be impeded by conflicting and varying regulations. See: *South Covington & Cincinnati Street Railway Co.* v. *City of Covington,* 235 U.S. 537, 59 L. ed. 350, 354; *Southern Pacific Co.* v. *Arizona,* 325 U.S. 761, 773-775, 89 L. ed. 1915, 1927-1928; *Bibb* v. *Navajo Freight Lines, Inc.* 359 U.S. 520, 3 L. ed. 2d 1003 ; *Application of United Air Lines, Inc.* 172 Neb. 784, 112 N.W.2d 414; *cf. Bethlehem Steel Co.* v. *New York State Labor Relations Board,* 330 U.S. 767, 775, 91 L. ed. 1234, 1247.

Nor, as the Commission principally contends, are the burdensome effects of regulation overcome by local interests which override competing national interests. A similar contention was made in *Application of United Air Lines, Inc.* 172 Neb. 784, 112 N.W.2d 414, 419, wherein the identical securities involved in this proceeding were being considered, and wherein Nebraska's counterpart of our own Commission had sought to assert jurisdiction over the issuance of such securities. In holding that the local aspects of United's business did not justify State regulation, the court said (p. 422) : "But here the application of United cannot be said to deal with essentially local aspects of United's business. Here the applications go to the very heart of United's interstate business, that of financing purchases of extensive equipment for use in interstate commerce, and the consolidation of United with a large interstate air carrier. Local interests are only incidentally involved, if involved at all." The facts in this record, which show that but a small fraction of United's business is transacted in this State, permit

no other conclusion. To say that our Commission may assert jurisdiction in this case is to allow it to intrude into an area of overwhelmingly predominant national interest.

The Commission relies chiefly on *People* v. *County Transportation Co.* 303 N.Y. 391, 103 N.E.2d 421, (appeal dismissed without opinion by the United States Supreme Court, 343 U.S. 961, 96 L. ed. 1359,) where it was held that the regulation by the State of New York of the issuance of securities by an interstate bus carrier would not unduly burden interstate commerce. However, when the competing State and national interests there involved are compared with those in the instant case, it becomes apparent that the New York decision is not a persuasive precedent here. The "small" bus company operated almost wholly in New York, its only interstate route being one of eight miles from New Rochelle, New York, to Stamford, Connecticut, thus making the State's interest paramount and the national interest relatively insignificant. Equally without value is *Rice* v. *Santa Fe Elevator Corp.* 331 U.S. 218, 91 L. ed. 1447. While the court did in that case recognize the power of Illinois to regulate the issuance of securities by a public utility, (331 U.S. at 237, 91 L. ed. at 1463,) there was no possibility of multi-State regulation, nor was the record developed on the commerce-clause point.

Accordingly, and for the reason stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*