LEATHER GRILLE & DRAPERY CO. v. CHRISTOPHERSON et al.

(Circuit Court of Appeals, Ninth Circuit. October 27, 1910.)

No. 1,750.

1. PATENTS (§ 202*)—ASSIGNMENT—EFFECT AS ESTOPPEL.

An assignor of a patent is not estopped to deny its infringement by a later invention of his own, nor to invoke the prior art for the purpose of showing that no infringement in fact exists.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281-289; Dec. Dig. § 202.*]

2. PATENTS (§ 328*)—INFRINGEMENT—ORNAMENTAL GRILLE WORK.

The Christopherson and Gillespie patent, No. 691,598, for a device for forming ornamental structures, such as grilles, etc., out of leather, felt, or other flexible materials, construed, and held not infringed by the device of the Christopherson patent, No. 766,595, for an improvement in the same art.

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by the Leather Grille & Drapery Company against Louis B. Christopherson and Oscar M. Walton, individually and as copartners under the name of Christopherson & Walton Company. Decree for defendants, and complainant appeals. Affirmed.

This is an appeal by the complainant in the court below from a decree dismissing its bill, wherein it sought an injunction and an accounting for damages against the defendants, appellees, for the alleged infringement of letters patent for an improvement in devices for forming ornamental structures such as grilles, portières, etc., out of leather, felt, and other flexible materials. The patent, which is numbered 691,598, was issued to the defendant Louis B. Christopherson and one M. M. Gillespie on January 21, 1902, and covers a device or process which is therein described as consisting "of a flexible material having slits or interspaces made lengthwise of the strips, said strips being opened out, so that the length is essentially transverse to the previous direction and the folding of the edges and connecting them with intermediate unions, so that any desired ornamental forms may be built up from these units."

The claims of the patent invoked as being infringed are 1, 3, and 7, and are thus stated in the patent:

"1. A device for the formation of ornamental structures comprising a strip of flexible material slit longitudinally and having the sides stretched transversely of the strip, and means independent of said strip for uniting the transverse sides formed by the slits."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

· "3. A device for the formation of ornamental structures, including a series of flexible strips having longitudinal slits, said strips having their sides stretched transversely, and unions or connections to which the sides of the strips are secured to insure a permanent form of the completed structure."

"7. Flexible strips having lines of slits, said strips having their sides expanded transversely, and unions or connections by which the sides of said strips are connected, and the forms or ornamentation shaped and determined."

An illustration of the forms of the device in different stages of the process as disclosed in the patent is presented in the drawings here inserted:

Fig. 1, the primary form, is a view of a strip of material having the slits made in it, but before stretching or expansion; Fig. 2 is the same strip extended laterally by stretching; Fig. 3 shows the manner of attaching the strips to the unions; and Fig. 4 is a portion of a grille with different forms of unions.

Prior to the date of the alleged infringement the grantees of the patent transferred and assigned all their interest in and rights thereunder to the complainant and appellant; and at the time of the acts complained of the latter was engaged in manufacturing and selling to the public ornamental structures in accordance with its privilege.

Subsequently to this assignment the defendant Christopherson applied for and was granted patent numbered 766,595, issued on August 2, 1904, covering an improvement in the same art, and wherein his invention is thus described:

"The objects of my invention are, first, to expand the material as much as possible, both in its own plane and transversely thereto; secondly, to produce as great a variety as possible of curves and of surfaces of curvature; thirdly, to provide a construction which shall be strong and durable, and therefore of especial value for material not adapted to withstand heavy strains, as thin leather or fabrics woven; fourthly, to provide a construction whereby from the plane blank a design of double curvature may be produced, showing from the front comparatively few raw edges, thereby rendering it adaptable for woven fabrics, as silk or cloth; fifthly, from such plane blank to provide a design of double curvature in which the pattern of the unit shall be broad and striking in appearance when viewed at a distance.

"In the accompanying drawings, Fig. 1 is a front elevation of a piece of grillework constructed in accordance with my invention. Fig. 2 is a blank from which one of the units of the grillework is formed. Fig. 3 is a section of

the line A, A, of Fig. 1.  Fig. 4 is a section on the line B, B, of Fig. 1.  Fig. 5 is a view of a blank illustrating my invention in its simplest form.  Fig. 6 is a side view of the unit formed therefrom without the side twist.  Fig. 7 is a similar view of the unit formed therefrom with the side twist, as in the main illustration of my invention in Fig. 1.  Fig. 8 is a view of a blank slightly modified from Fig. 5."

The following are the drawings thus described:

Fig. 1.
Fig. 3.
Fig. 4.
Fig. 5.
Fig. 6.
Fig. 2.
Fig. 7.
Fig. 8.

Referring to these drawings the patent further states:

"The blank is formed into the unit, as follows: It is first folded down at right angles at the ends, 2, in the direction of the main axis of the blank, but for a short distance only from said ends, the intermediate portion, 11, being by said folds slightly curved transversely of said main axis, as shown in Figs. 3 and 4. The free end of each strip, 6, is then given a double curvature. First it is bent back toward the attached end of the strip, or about an axis in the plane of the strip, but transverse to its general direction. Then said bent end is twisted about an axis parallel to said general direction, so as to bring the under surface of the strip, which was brought uppermost by the first bend, against the adjacent side of the folded end of the main portion of the blank. The ends of the strips being now in juxtaposition with the folded ends of the main portion, said blank has now been folded to form a unit for ornamental purposes. Said ends of the main portion, together with the free ends of the strips adjacent thereto, are secured by any suitable unions."

The claims of the patent are in keeping with this description.

It is in practicing the art under this latter patent that the alleged infringement is claimed to arise; it being admitted that for some time prior to and at the time of the filing of the bill the defendants were manufacturing and selling ornamental grilles substantially as illustrated in Fig. 1 last above displayed.

Frederick S. Lyon, for appellant.

Stacy W. Gibbs, for appellees.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

VAN FLEET, District Judge (after stating the facts as above). The appeal presents but one substantive question for consideration, and that is whether the device of patent 766,595 is an infringement of the appellant's patent; the question being purely one of construction.

In the solution of that question no material aid is afforded by regarding the somewhat refined and purely superficial features of similarity pointed out by the complainant's expert as existing between the devices of the two patents, and urged upon our attention in appellant's brief, since in our judgment they do not inhere in the essence of either patent, and are therefore not controlling in their construction. It is largely, if not wholly, immaterial, for instance, that both devices or processes involve, as a primary step or factor, the use of flexible strips or pieces of like material, or that both involve the use of slits, longitudinal or otherwise, in the prepared material, or that in both the use of the same or similar unions or connections is employed in uniting the different units of the ornamental structures produced thereunder. No novelty exists in either patent as to any one of these features; and they do not, either singly or together, affect in the slightest their construction.

The real inquiry is as to the controlling principle in each patent by which the device or process described therein is accomplished, and whether that principle is the same in both. Construing the claims of complainant's patent in the light of its specifications and the accompanying illustration of its device, we think it at once apparent that the essential principle there found is the employment of tension in separating and opening out the slotted material for the desired purpose, and that without this element the device or process would en-

tirely fail of its object. That this is clearly disclosed in .the patent and understood by the inventor is apparent. It is thus stated in the specifications:

"The feature of the construction is the opening out transversely of the flexible slotted or separable material, which is retained in its open and separated form by reason of the peculiar manner of connecting the sides transversely to the length of the slits or openings."

In claim 1 the essential language is:

"Having the sides stretched transversely of the strip, and means independent of said strip for uniting the transverse sides formed by the slits."

In claim 3 the same language is found; and in claim 7 it is stated as:

"Having their sides expanded transversely, and unions or connections by which the sides of said strips are connected and the forms or ornamentation shaped and determined."

It is thus made obvious that without the employment of lateral tension, as described, the process of appellant's patent could not be accomplished; that, but for some artificial means for retaining the material at tension, no ornamental structure such as there described could be formed; and that, at once tension is removed, the entire structure, so far as its ornamental features are concerned, must collapse and the process fail.

As this is the life of the patent, minor details may be ignored. Turning to defendants' patent, we find an entire absence of any such feature; but the employment of an essentially different method of construction. No tension is required or employed. As aptly stated in this regard by the learned judge in the court below:

"No such principle inheres in the defendants' device; in it there is no external or tensile strain. The sides of the slits are not attached to unions to give the structure form or to keep it expanded. Such expansion as obtains is due to torsion alone. The space between each pair of unions is occupied by solid or uncut material. Theoretically, there is no stretching at all, and practically the only expansion is that due to the nature of the material used. There is no stretching of a slit or opening in a direction transverse to its length, other than that due to the torsional strain."

As disclosed by the drawings and description in defendants' patent, the opening out of the ornamental figures in the cut material is accomplished solely by a folding and twisting of the separated tongues or laps; a process which no more resembles that employed in the device of appellant's patent than does the completed structure of the one resemble that of the other. Indeed, the only real similarity between the two would seem to lie in the fact that both processes pertain to the same art, may be produced from the same material, and with like instruments.

As to the question of estoppel urged against the defendant Christopherson and his codefendant, growing out of the assignment by the former of the patent in suit, the appellant was awarded by the rulings of the Circuit Court the full measure of protection afforded by that doctrine. The court ruled that Christopherson by his assignment was to be regarded as representing that the patent was

what it purported to be, was valid in accordance with its terms, that it was to be fairly construed, and that the prior art could not be invoked to limit its claims. This is the length to which the rule may be properly carried. Siemens-Halske Elect. Co. v. Duncan Elect. Mfg. Co. et al., 142 Fed. 157, 73 C. C. A. 375. It has never been held to estop an assignor from thereafter employing his genius in a new field of the same art, nor to deny him the fruits of such effort. It does not preclude him from denying infringement, nor of invoking the prior art for the purpose of showing that no infringement in fact exists. As stated by Judge Lurton, for the Circuit Court of Appeals of the Sixth Circuit, in Noonan v. Chester Park Athletic Club Co., 99 Fed. 90, 39 C. C. A. 426:

"But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger."

We take this to be a correct limitation of the rule. From these considerations we are satisfied that the Circuit Court was right in holding that there was no infringement; and accordingly its decree dismissing the bill should be affirmed.

It is so ordered.