**WILSON et al. v. BYRON JACKSON CO.**
**No. 8241.**

Circuit Court of Appeals, Ninth Circuit.
Dec. 3, 1937.

Hamer H. Jamieson and G. Benton Wilson, both of Los Angeles, Cal., for appellant.

Lyon & Lyon, Frederick S. Lyon, and Leonard S. Lyon, all of Los Angeles, Cal., for appellee.

Before WILBUR, STEPHENS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

On December 17, 1934, appellee filed a bill of complaint alleging acts of infringement of six patents for improve-

ts in well elevators and praying for an )unting and an injunction. On May 16, ), the District Court issued a preliminary injunction restraining appellant from ·inging letters patent as follows: Patent No. 1,341,957 issued to E. C. Wilson, entor, June 1, 1920, filed May 2, 1914; ent No. 1,314,996 issued to E. C. Wilson, inventor, September 2, 1919, filed January 2, 1909; patent No. 1,511,699 issued tober 14, 1924, to C. E. Wilcox, inventor, assignor to E. C. Wilson, filed January 1921; patent No. 1,599,144 issued September 7, 1926, to H. M. Paulsen, inventor, signor to Dunn Manufacturing Company, ed September 12, 1923. The appeal is )m orders of April 27, 1935, and May 3, 35, granting the injunction.

It appears from the complaint that ior to December 30, 1926, title to patents os. 1,314,996, 1,341,957, and 1,511,699 was sted in appellant, his wife, and his two ·others, G. B. Wilson and E. C. Wilson, id their wives, appellant and his wife ich owning one-sixteenth interest. On ecember 30, 1926, the owners of these itents granted to the Wilson Oil Tools orporation an exclusive license to manuicture and sell devices under these patnts.[1] On September 6, 1928, appellant, /ith the other owners of these patents, ranted appellee an option to purchase heir rights under this agreement, and the hree patents, for $1,000,000, which option appellee exercised. The patents and rights under the license agreements were assigned to appellee.[2] It further appears that appellee became owner of patent No. 1,-599,144, the Paulsen patent, as follows: On September 6, 1928, appellant and his wife, his two brothers and their wives, agreed to assign to appellee their title and the title of Paulsen to this patent. On September 7, 1928, Paulsen assigned his title to the patent to E. C. Wilson. It is alleged that in accordance with the above agreement of September 6, 1928, appellant and others procured from E. C. Wilson an assignment to appellee of "the whole right,

---

[1] By an option agreement dated June 1, 1928, appellee offered to purchase Wilson Oil Tools Corporation and Wilson and Willard Manufacturing Company, Wilson family corporations. This offer was accepted by the three Wilson brothers and the transaction was completed September 8, 1928.

[2] In the brief of amicus curiæ adopted by appellant the writer seeks to attack the orders of the trial court granting the injunction on the ground that the exhibits in the case at bar accompanying the bill showed that the assignments of the patents were made to Byron Jackson Pump Company rather than Byron Jackson Company, appellee. Although it is not alleged in the complaint that these two companies are one and the same, that fact is conceded throughout the trial of the case. This point cannot now be raised.

title and interest in and to the United States Letters Patent No. 1,599,144," the Paulsen patent.[3] It is also alleged that the Dunn Manufacturing Company assigned its title to the Paulsen patent to appellee.[4]

The elevators, the patents for which are alleged to be infringed in the case at bar, are used in lowering and raising pipe, casing, tubing, etc., in oil wells. The elevators consist of a pipe encircling part having two sections which are hinged together at one end and secured at the other by a locking device. For convenience of description, the larger and heavier section is called the body and the smaller one the gate. The pipe encircling parts of the elevator when open are placed around the pipe under the collars connecting the joints of the pipe. After the pipe is placed in the elevator, the unhinged ends of the gate and body are securely fastened together. Bails, linked suspension means, are attached to the body on each side of the elevator for hoisting and lowering it. The bails are made fast to the drilling cable. When the cable is raised, the elevator in contact with the collar supports the load. The patents sued upon in the case at bar are for the means used for securing the bails to the elevator and for the means to securely lock together the pipe encircling part.

Since the appeal was taken, patent No. 1,314,996 has expired and by stipulation the injunction in relation thereto has been vacated. We were informed by counsel on the hearing before this court that patent No. 1,341,957 has also expired. As to these patents, the appeal has become moot and is dismissed. Gamewell Fire-Alarm Tel. Co. v. Municipal Signal Co. (C. C.A.) 61 F. 208; National Folding Box & Paper Co. v. Robertson (C.C.A.) 104 F. 552; Lockwood v. Wickes (C.C.A.) 75 F. 118; Chapin v. Friedberger-Aaron Mfg. Co. (C.C.A.) 158 F. 409.

The granting of a preliminary injunction rests in the sound discretion of the trial court and its decision will not be disturbed unless there was an abuse of discretion. Kings County Raisin & Fruit Co. v. U. S. Consolidated Seeded Raisin Co. (C. C.A.) 182 F. 59; Owen v. Perkins Oil Well Cementing Co. (C.C.A.) 2 F.2d 247; American Grain Separator Co. v. Twin City Separator Co. (C.C.A.) 202 F. 202; Sherman-Clay & Co. v. Searchlight Horn Co. (C.C.A.) 214 F. 99. Did the lower court abuse its discretion in granting a preliminary injunction as to the remaining patents?

The Wilcox patent No. 1,511,699: This invention concerns a double-locking arrangement providing means whereby the pipe encircling parts of the elevator are locked together when the elevator is in place and the gate is closed. It consists of a latch at the lower end of the gate and another independent lock at the upper ends of the elevator parts. The upper locking device has a head which extends above the rest of the elevator when it is first secured in place. At the bottom of the head are two downwardly extending lugs which fit into notches in both sections of the elevator. When the load is lifted, thus forcing the head down, these lugs securely lock the gate. Claims 2, 10, and 11 of this patent are very broad, and are as follows:

"2. In a device of the character described embodying two relatively movable members adapted to embrace a casing the combination of, a latch to releasably connect the members in position embracing the casing, and a separate means to independently connect the members at a point removed from the latch.

"10. A device of the character described comprising two relatively movable casing embracing members, a latch to connect and hold the members in casing embracing position, and another connecting member separate from the latch and adapted to be actuated by reason of engagement with the casing collar to connect the cas-

---

3 Appellant contends in its brief that this assignment was not in pursuance of the agreement of September 6, 1928, because that agreement shows on its face it was to be executed at the option of appellee some three months before this assignment was made. In the absence of an answer or any contradiction to the pleading pointed out by appellant in the record, we assume that the assignment was procured by appellant and was made on his behalf in execution of the agreement of September 6, 1928.

4 Appellant contends that as the assignment was not produced, there was not sufficient proof of this assignment before the court and thus no title to this patent shown in appellee. Profert was made of this assignment. Appellant has pointed to no pleading or evidence denying this assignment. Under such circumstances, the allegation of the assignment with profert of said assignment was sufficient.

ing embracing members independently of their connection by the latch.

"11. A device of the character described comprising two relatively movable casing embracing members, a latch to connect and hold the members in casing embracing position, and another connecting member separate from the latch and adapted to connect the casing embracing members independently of their connection by the latch."

In the patent drawing the gate does not itself move vertically with reference to the body of the elevator, but the two parts (body and gate) merely swing with reference to each other, and the upper locking part consists of a lug detached from both except by a pin and spring that moves down under the load into counter-sunk groove in the two parts, T-shaped at both ends, thus locking the elevator.

The appellant's elevator performs the same service as the patented device and comes within the broad claims of the patent,[5] but has an additional function, the automatic closing of the gate at its upper end from a partially closed position when a load is placed on the elevator. This function is due to the wedge shape of a lug on the gate which moves downward and inward into a notch on the body of the elevator, locking the gate and body together when the load is placed on the elevator.

These general descriptions and claims are not very clear without the aid of the photographs and drawings in evidence and in the patents, but will suffice without them in view of our conclusion, which is based primarily upon an estoppel.

As to patent No. 1,511,699, it is clear that appellant by his assignment to appellee is estopped to deny the validity of the patent. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Leather Grille & Drapery Co. v. Christopherson (C. C.A.)° 182 F. 817. Appellee contends in his brief that the scope of this estoppel is extended by an estoppel in pais to cover the alleged infringing device,[6] because "appellee was induced to make and made its purchase relying upon the scope of the respective inventions of the patents in suit asserted by the Wilsons, and upon the interpretations and constructions of these patents by the Wilsons made at the time of the original option agreement of June 1, 1928 [option to purchase the two family corporation assets] before appellee exercised the options and completed the purchase." The facts concerning these representations are as follows: On March 10, 1927, appellant, his wife, his two brothers and their wives, the Wilson Oil Tools Company, and the Wilson & Willard Manufacturing Company, commenced an action in the District Court of the United States for the Southern District of California, Southern Division (No. L–82–J), against the Dunn Manufacturing Company, and others, alleging infringement of certain patents, including patent No. 1,511,699. This was prior to the sale of this patent to appellee. John B. Keating, chairman of the board of directors of appellee, filed an affidavit in support of the application for a temporary injunction in which he stated that before the purchase of the patents appellant and his brothers represented that the patents purchased (including patent No. 1,511,699 and the Paulsen patent No. 1,599,144) were valid and entitled to a broad interpretation. He further stated that appellant and his brothers represented that the testimony given on their behalf in the action brought by them against the Dunn Manufacturing Company (No. L–82–J) "was true and correct and that their patents were of a scope sufficient to cover each of the alleged infringing devices complained of in said suits." This testimony is corroborated by a telegram sent by E. C. Wilson to the attorneys representing appellee in the negotiations for the purchase of the patents as follows:

---

[5] James T. Barkelew testified as follows: "Defendant's elevator has in it every element specified by each of the above quoted claims, and those elements in defendant's elevator perform co-operatively substantially the same function in substantially the same manner to accomplish the same result; viz., acting to interconnect the two pipe encircling parts independently of the latch by virtue of the seating of the pipe collar."

[6] Appellant contends in his brief that appellee does not allege in his bill of complaint estoppel in pais and consequently it was error of the trial court to grant the injunction upon this ground. The application was heard upon the theory that estoppel in pais was in issue. Appellant points to no assignment of error embracing an objection made in the trial court to this alleged defect in the complaint. Objection now by appellant comes too late. Hertz Drivurself Stations v. Ritter (C.C.A.) 91 F.2d 539.

"June 21, 1928. * * * The suit against Dunn was filed March tenth last year for infringement of several of our elevator patents and hearing begins Tuesday stop our patents are substantial and the infringement is flagrant stop We have stopped all previous infringement these patents by vigorous prosecution and are confident our monopoly of elevators will be sustained stop. Writing."

Appellant, in that case, claimed a broad interpretation for these patents. It is clear that if the representations as to the interpretation to be placed on the patents sold may be considered as inducing the purchase of the patents, there was substantial evidence of an estoppel in pais in favor of appellee against appellant to thereafter claim that such patents were to be narrowly construed. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., supra; United Printing Machinery Co., v. Cross Paper Feeder Co. (C.C.A.) 227 F. 600. It is equally clear that such interpretation could reasonably be held as broad enough to include a device such as appellant's elevator. We conclude then that the trial court did not abuse its discretion in granting the temporary injunction as to patent No. 1,511,699.

We next discuss the Paulsen patent, No. 1,599,144. Appellant contends that he is not estopped from denying the validity of this patent, claiming that he never had any interest whatsoever to the title of this patent. It appears from the complaint that appellant agreed to assign his title to this patent, which title was purported to be assigned to appellee by E. C. Wilson in pursuance of this agreement (see footnote 3). It thus appears that appellant is estopped to attack its validity.

The Paulsen invention provides means to insure that the gate member of the elevator is latched closed prior to the elevator taking the load and to insure that when closed by taking up the load the elevator cannot be opened so long as the load is on, whether or not the gate is latched. It thus has as its object a double locking means operated by the weight of the load upon the elevator altogether independent of the closing of the latch occurring prior to the taking up of the load. The head of a plunger extends above the top of the elevator so that when the elevator takes up the load the plunger will be forced down. When thus forced down, the lower end of the plunger which consists of a curved nose, contacts with a cam located on the lower knuckle of the gate and swings the gate shut. The latch is operated by a spring and is formed so as to automatically lock when the gate is swung closed. Although the latch may be released by pulling upon its handle, it is impossible to open the gate while the load depresses the plunger which holds the cam in place. From a comparison of the device of the patent with appellant's device, it is evident that although a somewhat different mechanical structure is used in appellant's elevator for locking the elevator independently of the latch by the weight of the load, the objects of the patents and means used to accomplish them are similar.[8] There is evidence that prior to the assignment of this patent by appellant and his brothers it was represented by them to appellee that the patent was entitled to a broad interpretation. In view of the mechanical similarity of the two elevators, and in view of the fact that it appears probable that appellant is estopped to deny the validity of this patent, and to deny that the claims of the patent should be broadly construed, we conclude that the trial court did not abuse its discretion in granting the injunction as to this patent.

Order affirmed.

---

[8] Claims 10, 11, and 12 of the Paulsen patent, read as follows:

"10. In an elevator of the character described, a body adapted to be presented to work and provided with a gate cooperating with said body, and engaging means on said gate and body whereby the weight of the work actuates the gate into closed position.

"11. In an elevator of the character described a body adapted to receive work, a gate cooperating with said body, and means operated by the weight of the work adapted to actuate said gate into closed position.

"12. In an elevator of the character described a body, a gate cooperating with said body, said body being formed to receive work when said gate is in open position, and cooperating means on said body and gate actuated by the weight of said work to actuate said gate into closed position."