## DIXIE–VORTEX CO. v. PAPER CONTAINER MFG. CO.

### Civ. A. No. 354.

District Court, N. D. Illinois, E. D.

Feb. 17, 1942.

Charles W. Hills and Alexander C. Mabee, all of Chicago, Ill., for Dixie-Vortex Company.

Cromwell, Greist & Warden, of Chicago, Ill., for Paper Container Manufacturing Company.

BARNES, District Judge

This case involves questions of the alleged infringement and the validity of Holman Patent No. 1,594,617, Barbieri Patent No. 1,610,192, Smith & Bild Patent No. 2,203,510, and Amberg Patent No. 2,203,513.

The Holman Patent No. 1,594,617 discloses and claims a paper cup forming machine. The Smith & Bild Patent No. 2,203,510 discloses and claims an improved method of making and improvements in a machine for making paper cups. Amberg Patent No. 2,203,513 discloses and claims improvements in the method and machine disclosed in Smith & Bild No. 2,203,510.

The parties have stipulated that the defendant's accused machines are like the machines disclosed in the Hulseman patent application, Serial No. 224,560, except for a few differences stated in the stipulation. There is no controversy between the parties as to either the structure or the operation of defendant's accused machines.

The principal apparent difference between defendant's accused machines and the disclosures of the Holman, Smith & Bild and Amberg patents is that the patents disclose two (one cup forming, one cup pressing) cones of substantially equal size which revolve in opposite directions on fixed axes, while the accused machines use two (one cup forming, one cup pressing) cones of unequal size, one of which is stationary (the defendant prefers to call this cone a backing plate but that does not alter its character) and the other of which both revolves on its axis and rolls upon the surface of the stationary cone. The defendant's machines have a third revolving and rolling cone but it only makes a multiple machine (thereby increasing the output to which the defendant refers as avoiding infringement) without changing the mechanical principles involved.

The court has spoken of the principal apparent difference between the defendant's accused machines and the disclosures of the three patents. The difference is only apparent. The accused machines and the machines of the patents both have two cones which make line contact with each other. Since the cones disclosed in the patents both revolve on fixed axes, the paper blanks are pulled in between them and turn about a point as they are being formed into cups. Since one of the cones in the accused machines is stationary and the other revolves on its axis and rolls upon the surface of the stationary cone, the paper blanks do not turn about a point as they are being formed into cups but, on the contrary, lie motionless on the larger cone until they are rolled on the other. In the disclosures of the patents, the blanks move. In the accused machines, one of the cones moves.

Defendant says "Defendant's machine is as different from the machines in the Holman patent (and from the machine of the Smith & Bild and Amberg patents as well) as a rolling pin and bread board are different from a clothes wringer." That statement is unquestionably true. But when one remembers that in the three patents one of the revolving cones is a mandrel around which the blank is wound to form a paper cup and the other revolving cone is a platen which makes line contact with the mandrel and presses two portions of the blank against each other, so as to make them adhere to each other, while in

the accused machines the revolving and moving cone is a mandrel around which the blank is wound to form a paper cup and the other stationary cone is a platen which makes line contact with the mandrel and presses the two portions of the blank against each other so as to make them adhere to each other, it is apparent that there is no difference in the principles involved. In this case the rolling pin and the bread board are equivalent to the clothes wringer. The apparent difference does not avoid infringement. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Tondeur v. Stewart, C. C., 28 F. 561; Westinghouse Machine Co. v. Press Pub. Co., C. C., 127 F. 822; Wachs v. Balsam, 2 Cir., 38 F.2d 50; Freeman v. Altvater, 8 Cir., 66 F.2d 506.

 Claims 1 and 2 of the Holman patent, Claims 5, 6, 7, 9, 10, 11, 20, 23 and 24 of the Smith & Bild patent and Claims 4, 5, 8, 9, 10, 11, 13, 20, 40 and 41 of Amberg patent are in suit. The court is of the opinion that they all are infringed except Claims 5 and 7 of the Smith & Bild patent. Claim 5 of Smith & Bild contains an element as follows: "rotating each blank about a point substantially in its leading edge while rolling the same to conical form and simultaneously trimming circularly the edges of the blank forming the base of said conical shell." And Claim 7 of Smith & Bild contains an element as follows: "successively rolling up each blank to form a cone by turning it about a point substantially in its leading portions while rolling up the blank from its leading edge circularly toward one of the side edges, and securing the side edge on the leading edge." Because the accused machines have a cone which not only revolves on its axis but rolls on the stationary cone, the paper blank, when placed therein, remains motionless and does not either rotate "about a point substantially in its leading edge", or turn "about a point substantially in its leading portions." Accordingly, Claims 5 and 7 are not infringed.

 On the question of validity of the Holman patent, the defendant contends that the Potts patent No. 1,495,039 shows everything that Holman shows. The Potts machine was for making conical paper cups from paraffin coated paper blanks, while the Holman patent discloses a machine for making conical paper cups from uncoated paper glue bearing blanks. The undisputed evidence shows that cups made from these

different blanks require radically different treatment, particularly after they leave the forming cone. A cup made from an uncoated glued blank would spring apart after leaving the forming cone of the Potts machine while it retains its form after leaving the forming cone of the Holman machine. The difference is that between failure and success, and the disclosures of Holman provide for success while those of Potts do not.

The defendant says that Barbieri patent No. 1,547,777 shows operation upon a glued blank and provides means for applying a predetermined amount of glue to the blank. The plaintiff answers, and the court thinks correctly, that the Holman patent was a modification of and an improvement upon the machine shown in Barbieri and that it was the Holman invention which made the machine of the Barbieri patent an operative and highly successful machine, because of the manner in which Holman made provision for taking care of the cups after they were discharged from the forming mandrel. Holman makes no claim to the glue applying mechanism. The thing which Holman did to machines of the Barbieri and Potts type was to provide a structure which would quickly nest the cups after they were discharged from the forming mandrel and which would keep the cups nested and in proper shape until the glue had set. That structure included the pusher mechanism to push the nested cups into the chute and keep the cups from rebounding when they were discharged into the chute. The pusher mechanism was actuated directly from the feeding mechanism which gave perfect synchronization, and resulted in the provision of a new and novel combination defined in the Holman claims in suit.

The defendant refers to Munson patent 448,158, but the mechanism disclosed by Munson could not be used in making conical paper cups. Furthermore, the thin paper cups made by Holman could not be "stripped" from the mandrel as Munson strips his boxes from one of his dies. If the strippers disclosed by Munson were used in the manufacture of conical paper cups, the strippers would, while removing the cup from the mandrel, open up the cup and render it completely unfit for use.

The defendant refers to Barbieri Patent No. 1,535,757. The blank used in that Barbieri patent is a different type of blank from that of Holman. No glue

is used at all and the finished article is a different product and is used only in a supporting holder. It has no permanent shape of its own such as has the Holman cup. That Barbieri machine is a different type of machine, producing a dish instead of a cup, and the mechanism of that patent would not produce conical paper drinking cups.

The defendant also refers to Hutt & Phillips patent No. 537,289. The machine of that patent manufactures folded containers, similar to the oyster bucket. The sides of the blank are folded together. No glue whatever is used. The bucket is held together by the metal bail or handle. There is no problem of the bucket opening up after the bail has been inserted and the bucket placed in a stack. Furthermore, the bucket is not discharged from the shaping die. The shaping die is projected down into the chute. Strippers remove the bucket from the die while the die is being retracted from the upper end of the chute and then the strippers carry the bucket farther down the chute into nested relationship with previous containers. Such strippers would open up and destroy a glued paper cup upon which the glue had not set.

The defendant says that its accused machines are fashioned after the machines disclosed by Luellen patent No. 1,193,574 and Jennings patent No. 1,518,514. The only reason for this contention that the court can discover is that the accused machines and the machines of Luellen and Jennings all have stationary pressing dies or "backing plates", as the defendant prefers to call them. If Holman had everything of Luellen and Jennings except their stationary pressing dies, and nothing more, it would be invalid because it has the equivalent of their stationary pressing dies—a revolving pressing die—but Holman, as well as defendant's accused machines, have much more than Luellen and Jennings, and accordingly Luellen and Jennings do not anticipate Holman.

The defendant contends that the Holman claims are void because they read upon the machine of Carle patent No. 1,598,710. In the court's opinion that contention is erroneous. As was pointed out at the trial, in the machine of the Carle patent the cup is held on a mandrel for a considerable period of time while it is rubbing against brushes to keep the paper wound tightly on the mandrel while the glue is setting. The cup is retained on the mandrel until the mandrel has been operated in four different positions. By the time the mandrel has reached the discharge point, the glue has set and then the cup is handled by a stripper method, which is disclosed in the Carle patent. Such mechanism could not, without destroying the cups, handle the Holman cups as they come from the forming mandrel.

In the court's opinion, Claims 1 and 2 of the Holman patent are valid.

The defendant contends that Smith & Bild is invalid. It cites Luellen patent No. 1,193,574, Jennings patent No. 1,518,-514, Eppler patent No. 1,460,750, Ayer patent No. 1,575,894, Malm patent No. 1,-399,636, Simmons patent No. 1,667,498, Whitney patent No. 1,082,836, and Van Sant patent No. 1,434,934. Defendant's expert could not name a patent that shows all the operations of defendant's accused machine,—an argumentative acknowledgment that he could not name an anticipation. In the court's opinion no one of the patents named anticipates the disclosures of the patent in suit and it discloses invention over each and all of those cited.

On the question of the validity of the Amberg patent, the defendant cites Malm patent No. 1,399,636, Eppler patent No. 1,460,750, and Hutt & Phillips patent No. 537,289. In the court's opinion these patents do not anticipate, and Amberg discloses invention over their disclosures.

Barbieri patent No. 1,610,192 issued December 7, 1926, on an application filed February 8, 1923, is a patent on a conical paper cup and a process for making the same. Claims 1, 2, 3, 4 and 5 are in suit. In this patent it is said: "It is an object of the present invention to produce a cup which can be stacked in a nest without danger of becoming attached to the other cups in the nest. * * * to produce a cup of paper which is not coated, but is rendered waterproof in some other way. * * * to materially lessen the area of the paper which is tending to lift the outermost convolution from the body of the cup, so that the lifting action will separate the outer convolution less rapidly. * * * to leave the edge of the outermost convolution free from the cup for a short distance so that a small area of the paper near the point of the cup will spring a slight distance away from the cup. * * * to apply cementitious mate-

rial to the blank from which the cup is formed in such a position that when the cup is formed the desired free portion of paper will result, and also in such a position that when the cementitious material spreads under the action of the pressing rollers it will assist in sealing the point of the cup. * * * to form a blank for a cup of the class described which shall permit the several results just described to be accomplished without requiring any undue accuracy of manipulation. * * * to apply the cementitious material in the form of a patch with a recess therein which will accommodate the grippers that handle the blank in making the cup. * * * to so position said recess that the diminished area of cementitious material will occur on that portion of the blank which, in the finished cup, is an intermediate convolution."

The claims of the Barbieri patent in suit are as follows:

"1. A blank for paper cups, having an arcuate and two converging edges, one converging edge being offset with respect to the center of the arcuate edge, the other converging edge leading from substantially said center but not offset therefrom, and a projection between said converging edges, the edge of which forms a continuous curve therebetween.

"2. In a paper cup of the convolute conical type, cementitious material between overlapping convolutions, the outer convolution having near the point of the cone a margin free from cementitious material whereby said margin is free to spring outward from the cup.

"3. A conical paper cup having convolutions, the outermost convolution extending less distance from the point than those within and being free from the body of the cup for a fraction of a turn.

"4. A conical paper cup having convolutions, and an outwardly springing paper projection adjacent the point whereby when nested said cups are resiliently held apart.

"5. The method of forming a paper cup which consists in shaping a blank from noncoated waterproof paper, applying a cementitious material to one face of the parts of said blank which are intended to overlap, said applied material not extending to the edges of the blank, forming the blank into a convoluted conical cup, exerting pressure on the overlapping parts of the cup whereby the cementitious material

is forced towards but not beyond the edges of said blank, and permitting the uncemented margin portion near the point of the cup to spring away."

In the court's opinion these claims are infringed by defendant's cups and machines.

 On the question of validity, the defendant cites, Provandie patent No. 1,-125,171, Curtin Reissue Patent No. 15,381, and Carle patent No. 1,598,710. In the court's opinion, Claims 2, 3, 4 and 5 of Barbieri patent No. 1,610,192 are not anticipated by this art and are valid. Compare Dixie-Vortex Co. v. Imperial Paper Box Corp., D.C., 22 F.Supp. 206, affirmed, 2 Cir., 100 F.2d 1013. Each one of these claims calls for an element substantially as follows, —"the outer convolution having near the point of the cone a margin free from cementitious material whereby said margin is free to spring outward from the cup." This idea is not embodied in the cups of the prior art. It seems to be and is a small matter, but the evidence shows that it has important consequences. Conical paper cups must be closely nested in order that they may be packed, stored, and shipped economically. But they must be so constructed that, though closely nested, they may be separated easily and readily so that they may be dispensed quickly and economically. Invention not infrequently resides in small matters,—possibly because they are small. In the court's opinion it is found here in Claims 2, 3, 4 and 5. Claim 1 cannot be distinguished from the prior art and in the court's opinion is invalid.

 The plaintiff contends that the defendant is estopped to deny the validity of the Smith & Bild patent in suit. One Hulseman organized the defendant while he was still in the plaintiff's employ. He is the president of the defendant and owns 51% of its stock. In July, 1932, Hulseman owned an exclusive license to practice the Smith & Bild invention covered by the patent in suit, and also owned a machine embodying that invention. Hulseman sold that exclusive license and machine to Paper Cup Corporation, in consideration of the issuance to him of 49 shares of its capital stock (out of a total of 100 shares) plus the assumption by Paper Cup Corporation of Hulseman's debt to Smith & Bild. While president, director and sole managing officer of Paper Cup Corporation, Hulseman caused Paper Cup Corporation to settle with Smith & Bild and to purchase Smith & Bild's rights in their invention and pend-

ing application thereon which resulted in the issuance of the patent in suit. Later, Paper Cup Corporation sold the Smith & Bild invention and patent application to the plaintiff.

In the court's opinion, the foregoing facts create an estoppel on the part of the defendant to deny validity of the Smith & Bild patent in suit. Consolidated Rubber Tire Co. v. Finley Rubber Tire Co., C.C., 116 F. 629; Blount v. Societe, etc., 6 Cir., 53 F. 98; Wilson v. Byron Jackson Co., 9 Cir., 93 F.2d 572; Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S. Ct. 117, 69 L.Ed. 316; Buckingham Products Co. v. McAleer Mfg. Co., 6 Cir., 108 F.2d 192; Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co., 7 Cir., 142 F. 157; Johnson Furnace & Eng. Co. v. Western Furnace Co., 8 Cir., 178 F. 819; Martin Guage Co. v. Pollock, D.C., 251 F. 295.

The plaintiff also contends that the defendant is estopped to deny the utility, novelty, or validity of the Amberg patent in suit. The evidence shows that Hulseman, while controlling the activities and policies of the Paper Cup Corporation, and while he owned 49% of all of its capital stock and while he was acting as its president, director and sole managing officer, employed Amberg to make the invention covered by the Amberg patent in suit and procured an assignment thereof from Amberg to said Paper Cup Corporation. Hulseman presented to Amberg for Amberg's signature the patent application, as a result of which the patent in suit issued, had Amberg sign it and swear to it, and then delivered it to said Paper Cup Corporation. Subsequently, and while Hulseman still owned 49% of all of its capital stock, said Paper Cup Corporation sold and assigned the Amberg invention and application to the plaintiff. Plaintiff contends that the defendant is a mere incorporation of Hulseman, and is therefore subject to the same estoppels.

The court holds that both Hulseman and his privy, the defendant, are estopped to deny the Amberg patent in suit. Welsbach Light Co. v. Cohn, C.C., 181 F. 122; Blount v. Societe, etc., 6 Cir., 53 F. 98; Wilson v. Byron Jackson Co., 9 Cir., 93 F.2d 572; Johnson Furnace & Eng. Co. v. Western Furnace Co., 8 Cir., 178 F. 819; Force v. Sawyer-Boss Mfg. Co., C.C., 111 F. 902.

Counsel for the plaintiff may prepare and, within 7 days from this date, present drafts of findings of fact, conclusions of law, and a decree not inconsistent with the views hereinabove expressed. Counsel for the defendant may, within 14 days from this date, present, in writing, such, if any, observations in respect of or exceptions to the drafts presented on behalf of the plaintiff as he may deem necessary or desirable. Counsel for the plaintiff may, within 17 days from this date, present, in writing, such, if any, reply as he may deem necessary or desirable. This having been done, the matter of making findings of fact, conclusions of law, and a decree will be taken by the court without further oral argument.

Counsel may take and keep, subject to the order of the court, the exhibits of their respective clients.