**JACK WINTER, INC., a corporation, Plaintiff,**

v.

**KORATRON COMPANY, Inc., a corporation, Defendant.**

**KORATRON COMPANY, Inc., a corporation, Counterclaimant,**

v.

**JACK WINTER, INC., a corporation, Counterclaim defendant (and all cases consolidated for pretrial purposes).**

Civ. A. No. 49,392 and other cases, Nos. 47,273; 49,558; 49,671; 49,913; 50,063; 50,827; 50,854; 51,281; 51,301; 51,650; 51,653; 51,654 and 51,691.

United States District Court,
N. D. California,
San Francisco Division.

April 19, 1971.

See, also, D.C., 326 F.Supp. 121.

Foley & Lardner, by Timothy C. Frautschi, Marvin E. Klitsner, Milwaukee, Wis., Eckhoff & Hoppe, by Carl Hoppe, San Francisco, Cal., for Jack Winter, Inc.

Heller, Ehrman, White & McAuliffe, by Lloyd W. Dinkelspiel, Jr., M. Laur-

ence Popofsky, Stephen V. Bomse, San Francisco, Cal., Ellis & Levy, by Willard L. Ellis, San Francisco, Cal., Flehr, Hohbach, Test, Albritton & Herbert, by Paul D. Flehr, San Francisco, Cal., Limbach, Limbach & Sutton, by John P. Sutton, San Francisco, Cal., for Levi Strauss & Co.

Phelps, Hall & Keller, by Glen E. Keller, Denver, Colo., Watson, Leavenworth, Kelton & Taggart, by Thomas V. Heyman, Albert Robin, New York City, for Bayly Manufacturing Co.

Richards, Harris & Hubbard, by D. Carl Richards, Dallas, Tex., for Amory Garment Co. and Haggar Co.

Watson, Leavenworth, Kelton & Taggart, by Thomas V. Heyman, Albert Robin, New York City, Miller, Groezinger, Pettit, Evers & Martin, by Harold C. Nachtrieb, Anthony G. Wilson, San Francisco, Cal., for Henry I. Siegel Co., Inc.

King & Spalding, by Charles H. Kirbo, Charles M. Kidd, Atlanta, Ga., for Oxford Industries, Inc.

Brobeck, Phleger & Harrison, by Moses Lasky, Robert S. Daggett, Richard C. Wydick, San Francisco, Cal., Lyon & Lyon, by James W. Geriak, Los Angeles, Cal., for Koratron Company, Inc. and Koracorp Industries, Inc.

## MEMORANDUM OPINION
## AND ORDER

WILLIAM E. DOYLE, District Judge.

### I.

## GENERAL DESCRIPTION OF THE PATENT PROCESS AND THE PLEETSET PROCESS

The above group of cases which have common questions of fact, pursuant to 28 U.S.C. § 1407, have been transferred to the U. S. District Court for the Northern District of California for consolidated or coordinated pretrial proceedings. The undersigned has been designated by the Panel to conduct the proceedings.

At the center of all of the controversies is Koratron's patent, U. S. Patent No. 2,974,432, the so-called perma-press patent. Involved are a wide variety of suits including actions seeking to declare the patent invalid, actions to enforce license and royalty agreements and antitrust and patent misuse actions.

In the present motions the parties adversary to Koratron (sometimes called Koret, the predecessor of Koratron) seek partial summary judgment (pursuant to Rule 56 of the Federal Rules) on the following grounds:

"1. For a declaration that Koratron's patent No. 2,974,432 is invalid under the provisions of 35 U.S.C. § 102(b) because the purported invention described therein was 'in public use or on sale in this country more than one year prior to the date of the application for patent.'

"2. For a declaration that Koratron's patent No. 2,974,432 is invalid and/or unenforceable by reason of Koret's iniquitous conduct in prosecuting the application therefor in the United States Patent Office, to-wit: Koret's non-disclosure and willfull suppression of pertinent (prior) art including in particular its Pleetset process used for making its Pleetset line of garments and related or resulting misrepresentations."

The adversaries contend, despite the complexity of the issues, that there is no dispute as to any material issue of fact and that summary determinations are, therefore, proper.

### II.

## PUBLIC USE OR SALE MORE THAN ONE YEAR PRIOR TO DATE OF APPLICATION

Most of the emphasis in the supporting memorandum and other moving papers is on the public use of the '432 patent which occurred during the latter part of 1954, a time more than one year prior to the filing date of the application, which date was February 20, 1956. It is said that consequently the patent is invalid under the terms of 35 U.S.C. § 102(b). It is also vigorously argued

that notwithstanding that the patent had been practiced prior to the filing of the application, that the Koret Company nevertheless failed to disclose to the Patent Office their various commercial activities which had been carried on prior to the filing date.[1]

The public use which is relied on is the development and marketing of the so-called Pleetset which pertained to the pleating of women's skirts. It is said that this process embraced all of the patent process and thus effectively anticipated it. It is to be noted though that the patent applies to every type of finished garment and is not limited to the pleating of an unfinished lady's skirt. The inventors are William K. Warnock and Frank G. Hubener and their deposition testimony is liberally cited herein.

In the patent specification the process is described as involving the preparation of an aqueous solution of a mixture of water-soluble thermo-setting resins. To this is added a catalyst for the purpose of accelerating the curing of the resins. Use of a textile softener is prescribed but not required. The mixture is then introduced into a quantity of water to accompany the aqueous solution. The fabrics are, of course, washed before they are impregnated with the solution. The material is then squeezed so as to retain 70 to 80 percent by weight of the solution and the fabric is then partially dried in a manner which retains a small percentage of the moisture content. Thereafter, the fabric is manufactured into a garment. After completion by cutting, sewing, finishing and pressing, the entire garments are subjected to a garment setting oven. Thus, the garment is in a finished state when it is placed in the setting oven for the purpose of bringing about complete polymerization and setting of the resins in the garments so as to bring about a water-insoluble state. The temperature of the ovens varies according to the heft of the particular fabric.

It is of interest here to note that the Specification, column 4, line 39, provides:

"Our improved method hereinabove described has been successfully practiced in connection with the production of thousands of garments in which creases as well as pleats have been formed. Cotton garments manufactured and processed in accordance with the foregoing steps have been submitted to a nationally recognized testing laboratory with the request that they be tested for their press-free crease retention qualities or properties. This laboratory machine-washed these garments in commercial-type washing machines and reported that after approximately thirty of such washings there was no wrinkling in the garments, creases were retained and were sharp, and no pressing of the garments was considered necessary."

The testimony and exhibits herein cover extensive and detailed evidence as to the commercial activities prior to February 20, 1956, the filing date. For example, cost cards disclose that during early 1955 Pleetset garments were made. Samples of these garments have been submitted and have been examined. The manufacture of these was supervised by Mr. Warnock, the inventor of the '432 patent. The evidence offered here establishes that prior to the critical date lengths of fabric suitable for the manufacture of skirts were cut from resin impregnated fabric. Next a hem was sewed on to the length of cloth. After that it was pleated and thereafter the resin was cured. Finally, the length was made into a skirt by sewing a waistband on it and bringing the cloth together with a zipper or by other means. Evidence is offered that the finished skirt was water-insoluble and it was guaranteed washable.

1. It should be mentioned that Koratron now maintains that the filing date should be properly in December 1954, when the first application was filed and was rejected by the Patent Office on alleged technical grounds. Conceivably this could emerge as an issue.

Marketing bulletins of Koret are pointed to as stating that the skirts had the attributes of garments made under the patent. One particular publicity announcement refers to these as permanently pleated cotton skirts with pleating, that is, unconditionally guaranteed for the life of the garment. Sales summary sheets of Koret are submitted to establish that even prior to December 1954, preparations were made for the manufacture of these garments.

Also relied on are so-called sales bookings from sales summaries. These purport to show receipt of sales orders starting at the end of December 1954 and continuing to the critical date and beyond.

From all of the foregoing and from manufacturer summary sheets, it is apparent that in this period a very large quantity of Pleetset type products was manufactured and extensive preparations for its sale were made. The authenticity of the evidence tendered is not fully established, but no counteracting evidence directly disputing this showing has been tendered by Koratron.

The essential differences between the two processes are

*First,* the fact that Pleetset is limited to the treating of what might be described as yard goods for use as a skirt.

*Secondly,* Pleetset, while generally similar to the patent process, does not polymerize the finished product, and it is contended by Koratron that this distinguishing factor is of paramount importance. In the case of the Pleetset process additional sewing is performed after the curing of the resins.

The adversaries would have us rule from the evidence presented that there is no substantial difference whatever between the two processes; that the method employed in the Pleetset process more than one year prior to the date of filing the '432 application involves every step which is taught in the '432 patent and, thus, that the differences are superficial and inconsequential. To the lay mind this argument has some appeal. We must be conscious of the fact, however, that wash and wear fabrics were in use long before the present application, and that the polymerization process was by no means new as of the date of the application; that this is not the invention. Thus, Koratron maintains that the important aspect of this invention is the finishing of the garment prior to the curing process. It is said that this was a major pioneering step which was not practiced in the Pleetset process.

■ Notwithstanding that the argument has some appeal, as previously noted, and even though there is a vast amount of testimony and evidence pertaining to both use of the Pleetset and similarity of the two processes, we are unconvinced that the adversaries have excluded all reasonable doubts and that summary judgment should be granted. There are remaining questions which, in the opinion of the Court, ought to be tried.

We do not here seek to delineate and delimit the issues which are to be tried. It should not, of course, be necessary to have witnesses identify the volume of documents which have been obtained from Koratron, and it should not be necessary to devote extensive court time to establishing the commercial activities in connection with the Pleetset method. However, the nature and extent of activities and the actual dates involved remain somewhat sketchy and should be firmed up at any trial that is had. However, more important would be presentation of expert patent testimony as to the significance in fact and in law of the similarities on the one hand or, on the other, differences between Pleetset and the patent process in the light of the history and background of the developments of this kind of fabric treating. This would give the trier a much better feel of the case whereby he could, hopefully at least, make a more intelligent judgment as to public use prior to the one year period.

### III.

## THE EFFECT OF WITHHOLDING OF INFORMATION AS TO PLEET-SET IN CONNECTION WITH THE OBTAINING OF THE PATENT

It would appear that there is no dispute but that Pleetset was not identified and presented to the Patent Office as prior art during any of the proceedings. The evidence shows, however, that the examiner was aware that the process of pleating and subsequently curing which is essentially Pleetset was revealed, although the extensive activities were not mentioned.

Revelation of the activities of Koret in respect to Pleetset, that is, the volume of their efforts and the particular process of cutting skirt lengths, pleating and subsequently curing or polymerizing under the name of Pleetset, appears to have been neglected. The defendants maintain that this was unimportant since the file wrapper discloses that the information as to the practices similar to Pleetset or the same as Pleetset were brought to the attention of the Patent Office. Defendants point to the lengthy proceedings before the Patent Office between the date of filing, February 20, 1956, and the date of the issue of the patent, March 14, 1961, and the careful scrutiny of the prior art. In the course of these proceedings the method claims were upheld and the claims pertaining to the garments produced were rejected during this period. It was represented to the Patent Office by one of the inventors that the prior art patent relied on by the examiners to reject the claims were of no value commercially and would be impossible to carry out. The inventor was referring to the Brown and Zinamon patents (on which the examiner had been relying). It is said that implicit in this was the representation that no prior art, including Pleetset, was capable of being carried out. It is also argued that Pleetset was regarded as embraced within the process patent claims ultimately accepted.

We find the same difficulty in determining that there exists no genuine issue of fact in this area as in that previously considered. The record before the Patent Office is lengthy and complex, and absent a holding that Pleetset is identically the same as the invention, which finding would dispose of the case on this point also, it is impossible to say with the requisite degree of certainty that a fraud was practiced on the Patent Office. It may well be that there was a positive duty to identify Pleetset as such in the presentation to the Patent Office. There remains, however, the issue whether this was a conscious and intentional withholding of material matter. This latter question is especially difficult to determine. Therefore, a trier of the facts ought to determine this issue also from a reading of exhibits, transcripts and arguments and evaluation of the witnesses as they testify on the stand. A measure of their credibility and the obtaining of the feel of the case becomes especially important.

One often gains valuable insight from the total facts which cannot be acquired from a microscopic approach which obtains on a summary judgment motion.

The magnitude of this particular case, and its high importance, demands that it be determined on some basis other than summary procedure. The property rights of the defendants, as well as the adversaries, are deeply and extensively involved. This dictates that there be a most careful scrutiny.

In summary, then, we are of the opinion that the patent validity issues outlined above should be determined in a bifurcated trial. These questions lend themselves to separate determination and decisions with respect to them could go a long way in finally disposing of the litigation. Trials on these questions alone should not require a great amount of time.

There are ten cases in California in which the present patent validity questions could be determined. An early judgment in these consolidated cases

could be of great help in the final judgment in the case.

If all of the parties adversary were to agree to participate in this limited trial and to be bound by the judgment, the resulting adjudications could conceivably greatly simplify the disposition of the remaining issues following the remand of the cases by the Panel. It would be desirable to have this partial trial in the near future. Plans can be finalized at the May pretrial conference. All aspects of this are, of course, open including who should preside at the trial.

The motion for partial summary judgment is denied.

## MEMORANDUM OPINION AND ORDER

Deering Milliken has filed separate motions for partial summary judgment on several grounds.

There are two actions in which these motions are filed. The first of these was brought by Koratron in the Northern District of California, June 19, 1967, complaining that Deering Milliken had induced Koratron's licensees of U. S. Patent 2,974,432 (which we refer to as the '432 patent) to breach their contracts by advising them that the use of Deering Milliken fabrics in making permanent press garments was outside the scope of the '432 patent. At about the same time Deering Milliken filed an action in the United States District Court for the Southern District of New York seeking a judgment declaring invalidity and non-infringement of both the '432 patent and a certain improvement patent, 3,268,915 (the '915 patent). Subsequently, the proceedings in New York were stayed and later the actions were consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407 in connection with the other cases under the supervision of the undersigned.

Specifically, Deering Milliken seeks the following orders:

1. That its fabrics Visa, Milstar and Milliset do not come within the '432 patent, and consequently that Deering Milliken did not interfere with the contractual relationship between Koratron and its licensees and prospective licensees.

2. An order dismissing all claims by Koratron insofar as they relate to U. S. Patent '915 and insofar as they raise claims that Deering Milliken interfered with Koratron's contractual relationships in connection with the '915 patent.

3. Deering Milliken joins with the adversaries in their motions that the '432 patent is invalid. These motions have been denied as to all the moving parties, including Deering Milliken.

Koratron has dedicated the '915 patent, and this action has given rise to the present motions pertaining to that patent.

### I.

### EFFECT OF THE DEDICATION DURING THE PENDENCY OF THE LITIGATION

At the time of the oral argument on February 26, we expressed the view that the question whether the '915 patent was void *ab initio* was moot and we still hold to that view. It would be futile to consider the arguments that are advanced by counsel for Deering Milliken that this patent was void on the ground of anticipation or that the fabrics in question did not in any case infringe the '915 patent because of differences in the processes, since as we view it the dedication of the '915 patent renders it wholly ineffectual as a basis for any claim not only from and after the date of the dedication, but also from the time that any claims were asserted based upon this patent.

There is very little authority exactly in point, but that which we have been able to find supports the view expressed. The case of Laitram Corporation v. Deepsouth Packing Company, 279 F.Supp. 883 (E.D.La.1968), holds that the question whether a dedicated patent is to be held invalid *ab initio* becomes moot after dedication. The trial court dismissed a counterclaim alleging the invalidity of this patent, holding that the claim had

become moot; that it would serve no purpose for the court to pass on validity or invalidity. It was there said:

> Laitram's dedication to the public of the patent for the shrimp peeling machine (2778055, referred to as 055) terminates all of its rights in that patent, just as if it had expired. It would therefore serve no purpose for this Court to pass upon the validity or invalidity of that patent. Whether the patent was valid or invalid, Deepsouth has been unable to show any reason why the court's determination of the asserted invalidity of the patent before its dedication would be of any legal significance. Discussion of the patent therefore would not only be academic but it also would be beyond the jurisdiction of this Court, which may consider only cases and controversies.

Also analogous are the patent expiration cases. See Robertson Rock Bit Co. v. Hughes Tool Co., 176 F.2d 783 (5th Cir. 1949), and Wilson v. Byron Jackson Co., 93 F.2d 572 (9th Cir. 1937). In the *Robertson* case the district court had ruled that a certain patent was valid and had enjoined the defendants from infringing it. However, this patent expired while the appeal was being processed. The Circuit Court held that inasmuch as the patent had expired, the issues relating to the validity of this patent had become moot. In *Wilson* the Court of Appeals said:

> Since the appeal was taken, patent No. 1,314,996 has expired and by stipulation the injunction in relation thereto has been vacated. We were informed by counsel on the hearing before this court that patent No. 1,341,957 has also expired. As to these patents, the appeal has become moot and is dismissed. Gamewell Fire-Alarm Tel. Co. v. Municipal Signal Co. (C.C.A. 1 Cir.) 61 F. 208; National Folding Box & Paper Co. v. Robertson (C.C.A. 2 Cir.) 104 F. 552; Lockwood v. Wickes (C.C.A. 10 Cir.) 75 F. 118; Chapin v. Friedberger-Aaron Mfg. Co. (C.C.A. 3 Cir.) 158 F. 409.

The arguments of Deering Milliken going to invalidity of the '915 patent, even though cogent and persuasive, cannot be determined because they are not live controversies.

We leave open the question whether Deering Milliken is entitled to costs and expenses as a result of preparations pertaining specifically to the '915 patent. This should be presented in a separate motion documented with facts and figures.

The motion for summary judgment based on the invalidity of the '915 patent is denied. All claims of Koratron predicated on infringement or interference in connection with the '915 patent have been, to our knowledge, dismissed. If not, we will sign an order dismissing any claims that have not been covered by previous orders. The matter of assessment of costs is reserved.

## II.

## DEERING MILLIKEN'S CONTENTIONS THAT ITS FABRICS DO NOT COME WITHIN THE CLAIMS OF THE '432 PATENT

Deering Milliken argues that there are marked differences between their process and that of Koratron. The undisputed evidence, according to Deering Milliken, is that the fabrics are polymerized when shipped to customers and in this respect differ from the '432 patent process which calls for final curing after the garment is completed.

The second claimed difference is that the moisture content in the Deering Milliken fabrics is at or below the natural moisture level of the fabrics rather than being maintained at approximately two to eight percent above the natural moisture content as prescribed by the '432 patent.

The evidence relied on by Deering Milliken is contained in answers of Deering Milliken people given in response to Koratron interrogatories. Koratron has, however, brought forth some deposition testimony of an expert from Levi Strauss

who has testified that a final curing process was carried out by the garment maker on instructions from Milliken. If so, this would be a remaining dispute of fact, assuming that the difference is sufficiently substantial (and it would appear to be so).

We are of the opinion that this motion is somewhat premature since the discovery is continuing.

As previously noted, in connection with the summary judgment order having to do with the '432 patent, summary judgment is not the ideal vehicle for this kind of decision. In fact, it seems less adapted to an infringement question than to a validity or invalidity question.

Accordingly, all of Deering Milliken's motions are denied with leave to renew them if the evidence becomes further refined. It is possible that these issues could be tried in connection with the contemplated trial on the validity questions.